**LEMON v. UNITED STATES et al.**

No. 2812.

District Court, D. Maryland.

Nov. 26, 1946.

E. Milton Altfeld, Sidney Hillman and Hillman & Hillman, all of Baltimore, Md., for libelant.

Bernard J. Flynn, U. S. Atty., C. Ross McKenrick, Asst. U. S. Atty., Theodore R. Dankmeyer, and Niles, Barton, Morrow & Yost, all of Baltimore, Md., for respondents.

CHESNUT, District Judge.

The question before the court arises on the respondents' exceptions to the amended libel in which it is alleged that the death of a seaman, William Lemon, Jr., employed by the respondents, was caused by their negligence. The suit is evidently brought under the Suits in Admiralty Act which permits suits against the United States, and under the Jones Act, 46 U.S.C.A. § 688, which permits a suit for damages for injuries caused by negligence in accordance with the principles of the Employers Liability Act.

The facts pleaded in the libel are these.

William Lemon, Jr., on February 4, 1946, was a seaman and member of the crew of the American Steamship "Francis Scott Key", owned and operated by the respondents. The vessel on that date was anchored at Bolivar Roadstead (the entrance to Galveston, Texas Harbor), awaiting an unloading berth at the San Jacinto Ordnance Depot. Some of the crew, including the named seaman, were granted shore leave. About 11 P. M. the seaman in proceeding back to his vessel "found no means afforded him by the Respondents to return from land to the vessel * * * and therefore was forced to board an itinerant launch plying the Galveston Harbor in order to return to his vessel". When the launch arrived at the vessel the seaman was found dead in the cabin of the launch "through fumes of carbon-monoxide gas enveloping the cabin of the launch". The libel then proceeds, as a basis for the charge of negligence and the proximate cause of the seaman's death therefrom, to say "that the death was occasioned by the negligent failure of the Respondents to afford him a reasonably safe place in which to work, safe appliances with which to work, and a reasonably safe means of returning to his vessel".

It will be noted that the libel does not state by what means of transportation the

seaman proceeded from the ship to the shore, and particularly does not allege that the ship afforded him this means of transportation by employment of a launch, and does not allege that the ship either expressly or impliedly promised or held out to the seaman that it would furnish either directly or indirectly a launch or other vessel for transportation of the seaman back from shore to the ship. At the hearing on the exceptions special inquiry was made by the court as to the possibilities of amending the libel by alleging further facts in this respect. And it was then stated by counsel for the respondents and conceded, as I understand it, by counsel for the libelant, that the seaman and other members of the crew had engaged and paid for their own transportation from ship to shore and return from shore to ship by paying their own passage money to "itinerant" craft plying in the harbor. Particularly it is to be noted that there is no allegation in the libel and apparently no opportunity to the libelant on the facts to allege or contend that the itinerant launch so employed by the seamen was in any way employed by or under the control or management either directly or indirectly of the ship. Nor are any facts alleged in the libel which would give rise to the obligation of the ship either in law or in fact, by virtue of custom or otherwise, to provide safe transportation for the members of the crew to and from shore.

The point of the case therefore seems to be the narrow one whether, as a feature of the maritime law, in the duties of the ship to members of the crew who have been granted shore leave, there is the obligation on the part of the ship to furnish free and safe transportation to and from shore, where the vessel, as in the instant case, is lying moored a considerable distance from the dock.

The exceptions sharply and clearly present this question and deny as a matter of maritime law the existence of any such duty on the part of the ship. The exceptions also make the point that even if there were such a duty the facts alleged do not show that the death of the seaman was proximately caused by the failure of the ship to provide transportation; but

that on the contrary the death resulted from an independent intervening cause, namely the selection by the seaman of an unseaworthy launch; and further that the death of the seaman was not a foreseeable consequence of the alleged breach of duty.

Counsel for the libelant has been unable to refer me to any authority, nor have I found any, that imposes a duty on the ship anchored far from the dock to provide transportation to and from shore to members of the crew who have been granted shore leave. The view advanced in support of the libel is that it has in effect alleged the existence of this duty. But that obviously is a mere conclusion of law and insufficient unless the court can find that the maritime law does include the duty. It was said in argument that at times ships anchored away from the dock do in fact undertake to provide such transportation by employing a local launch for that purpose. The only case which has been referred to that involves a similar subject matter was a case in which the ship did on its own initiative undertake to provide such transportation, and on the facts there involved, the district court found negligence on the part of the operator of the launch attributable to the ship, Hartman v. Toyo Kisen Kaisha S. S. Co., D.C., 1917, 244 F. 567; but on appeal the decision was reversed, 253 F. 422, on the ground that the seaman was at the time of his injury, when seeking to board the ship from the launch, not in the service of the ship; and even if it could be so held, was guilty of contributory negligence. It may be thought today (since Aguilar v. Standard Oil Co., infra) that in like circumstances, at least for purposes of maintenance and cure and wages, the seaman was in the "service of the ship"; but if so, the cited case is not in point here because on the facts the launch was voluntarily engaged by the shipowner, while in the instant case there is nothing alleged in the libel to that effect.

The principal legal contention of counsel for the libelant is that the protection afforded to seamen by the maritime law has been greatly increased by recent decisions of the Supreme Court in the case

of O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 and Aguilar v. Standard Oil Co. of N. J., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107. But as I read these cases they do not mount up to the proposition here contended for and do not impose any greater duty on the ship with respect to transportation of seamen granted shore leave to and from shore than was previously afforded by the general maritime law. The principal point decided in the O'Donnell case was that a seaman, admittedly in the service of the ship, who was injured on the dock by the negligence of the ship, was entitled to sue under the Jones Act despite the fact that his injury occurred on the shore and not on the ship itself. In the Aguilar case the suit was not based on negligence but was for maintenance and cure, to which the case held seamen were entitled when their disabilities occurred while traversing an area between their moored ships and the public streets by an appropriate route. And it may be significant to note that in the opinion by Mr. Justice Rutledge (318 U.S. at page 736, 63 S.Ct. at page 937, 87 L.Ed. 1107) it was said:

"Consequently the fact that the shipowner might not be liable to the seaman in damages for the dock owner's negligence, cf. Todahl v. Sudden & Christenson, 9 Cir., 5 F.2d 462, does not relieve him of his duty of maintenance and cure."

The private engagement of a launch at his own expense by the seaman in this case would seem to be analogous to his hiring of an independent taxicab on the dock to carry him to his intended destination. While he might be entitled to maintenance, cure and wages during disability from an accident due to the negligence of the taxicab operator, it does not follow that the shipowner would be liable in damages for the negligent injury, and I do not think the maritime law would impose any such liability, where the seaman was on shore leave and not in the service of the ship at the time.

As I am unable to find that the maritime law imposes on a shipowner the obligation to furnish transportation to and from shore to seaman granted shore leave, I conclude that the libel as now drawn fails to state a good cause of action for the recovery of damages for the unfortunate death of the seaman. I think it unnecessary to rule upon the other reasons advanced in the exceptions, with respect to lack of sufficient allegation of proximate cause and lack of foreseeable consequences, although prima facie these exceptions would appear plausibly sustainable. Exceptions to the libel will, therefore, be sustained but leave will be given to counsel for the libelant to amend the libel within thirty days if his information as to further facts seems to justify it.

An appropriate order may be submitted by counsel.