**WHEELER v. WEST INDIA S. S. CO.**

United States District Court
S. D. New York.
Oct. 19, 1951.

See also, D.C., 11 F.R.D. 396.

632

George J. Engelman, New York City, for plaintiff.

Haight, Deming, Gardner, Poor & Havens, J. Ward O'Neill and John C. Mundt, Jr., all of New York City, for defendant.

BONDY, District Judge.

This is a motion for an order setting aside a verdict for $109,860 rendered in an action brought by the plaintiff under the Jones Act, 46 U.S.C.A. § 688, for injuries alleged to have been sustained through the negligence of the defendant's master and granting a new trial, or directing the entry of judgment for defendant.

Plaintiff was second assistant engineer on the S.S. Lou Gehrig, operated by the defendant. The Gehrig arrived at La Pallice, France, in the afternoon of August 18, 1947. No berth then being available, she anchored two to three miles from a viaduct which extended about one mile into the sea from the shore.

About 8:00 P.M. the next day, the Gehrig docked alongside a jetty or mole at the end of the viaduct. No notices prohibiting shore leave having been posted, the plaintiff and the chief engineer, who were off duty, immediately left the ship and went ashore over the viaduct. The plaintiff testified that there was then still "lots of sunlight".

The viaduct was a wide structure, with steel beams alongside and overhead. On it there was a wide two or three lane roadway and alongside it railroad tracks set flush with the roadway. Walkways along both sides of the viaduct had been bombed during the last war and were roped off. There were not any lighting facilities on the viaduct.

Plaintiff and his companion stopped at a cafe at La Pallice. Thereafter they visited cafes and a casino at La Rochelle. They returned to La Pallice from there at about 2:00 A.M. in a taxicab, accompanied by other members of the Gehrig's crew who had also gone ashore. Plaintiff was not under any duty to return to his ship until eight o'clock in the morning to keep his watch.

At La Pallice, they attempted unsuccessfully to persuade a cafe which had closed to admit them for a final drink. After an argument with the cab driver about the fare, the cab left the group. Upon the approach of two policemen, plaintiff, fearing that they were about to be arrested, ran away. However, the policemen merely led the group to the entrance to the viaduct. The group then started to walk over the viaduct towards their ship. Shortly thereafter, the plaintiff reached the viaduct, and hurried ahead in order to overtake his companions. It is undisputed that it was very dark at the time.

While looking down and jogging along, the plaintiff was struck by a tender attached to a locomotive of the French National Railroads, coasting backwards down the viaduct. One of his legs was severed below the knee and the other leg so mangled that it had to be amputated. Although two of the group testified that they saw two small red lights on the leading end of the tender, the plaintiff and other witnesses testified that they did not observe any lights and that they had not any warning that a locomotive was being operated on the viaduct.

The plaintiff's testimony that he was not intoxicated at the time of the accident was corroborated by Thorpe, the chief engineer, in his deposition and was not contradicted. Other members of the crew returning from shore leave shortly after the accident, used a taxicab to take them to the ship at the end of the viaduct. The viaduct was neither owned nor controlled by the defendant. It does not appear that the Gehrig's master had any actual knowledge either of the absence of light or lighting facilities on the viaduct, or of the operation of any locomotive thereon at night when there was not any loading or discharging of cargo.

■ Defendant's contention that the plaintiff can not recover under the Jones Act because his injuries, suffered while returning from shore leave, were not suffered "in the course of his employment" can not be sustained. Nowery v. Smith, 69 F. Supp. 755, affirmed, 3 Cir., 1947, 161 F.2d 732; Walton v. Continental S.S. Co., D.C., 66 F.Supp. 836. See O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 63

S.Ct. 488, 87 L.Ed. 596; Marceau v. Great Lakes Transit Corp., 2 Cir., 146 F.2d 416; Kyriakos v. Goulandris, 2 Cir., 1945, 151 F.2d 132. See also on the right of seamen to shore leave, Warren v. United States, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503; Aguilar v. Standard Oil Co. of N. J., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107.

The defendant also contends that whether or not Wheeler was in the course of employment at the time he was injured, he failed to establish negligence on the part of the master and that even if the master had been negligent, such negligence was not the proximate cause of plaintiff's injuries. The plaintiff, on the other hand, contends that the master's failure either to prohibit shore leave or else to warn plaintiff of the allegedly unsafe condition of the viaduct before permitting shore leave constituted negligence.

■ Situations may arise which might require the master, in the exercise of reasonable care, to deny shore leave, as for example a virulent epidemic in the port in which the vessel is docked. See McAllister v. Cosmopolitan Shipping Co., 2 Cir., 1948, 169 F.2d 4, 7. However, it would seem entirely unreasonable for any jury to conclude that the facts in this case required a denial of shore leave.

In Farrell v. United States, 2 Cir., 167 F.2d 781, 783, the Court of Appeals for this Circuit held that a master was not under any duty to deny shore leave simply because the "port (was) partially destroyed and under limited illumination because of conditions resulting from the war * *." On the contrary, said the Court, the master was bound to give reasonable recognition to his crew's right to shore leave when off duty.

Plaintiff complains of the master's failure to inspect the viaduct and to warn plaintiff of its allegedly unsafe condition.

■ A reasonably diligent inspection by the master, immediately after the Gehrig docked at the mole, would certainly have disclosed that the walkways were damaged, that railroad tracks were set flush with the viaduct's surface, and that there were railroad cars on those tracks at the viaduct's

offshore end, and possibly that the viaduct lacked lighting facilities. All these facts were equally obvious to the plaintiff and Chief engineer Thorpe when they went ashore over the viaduct immediately after the Gehrig docked and while there was still "lots of sunlight". The evidence established that they in fact noticed the damaged walkways, the tracks, the railroad cars and were aware of the width of the roadway. The record is silent as to whether they also noticed the lack of lighting facilities. There was no duty upon the master to warn them of the obvious. Farrell **v.** United States, supra; Todahl v. Sudden & Christenson, 9 Cir., 5 F.2d 462. Moreover, it may be doubted whether these conditions could be considered as rendering the viaduct unsafe, it being in daily public use by railroad cars, engines, automobiles, trucks and men walking thereon.

It was only the negligent operation of the locomotive upon the viaduct at 2:00 o'clock in the morning which gave rise to plaintiff's injuries. An inspection of the viaduct by the master at the time of docking would not have disclosed that a locomotive would be operating thereon, negligently or otherwise, seven hours thereafter, over tracks ordinarily used in connection with the loading and unloading of cargo during the daytime. The plaintiff does not suggest that the master was under a duty to maintain continuously a guard against the negligence of third persons so long as any of his crew remained ashore. It would be clearly unreasonable to find that a reasonably prudent man, in the position of the Gehrig's master, should have taken precautions against the negligent operation of the locomotive when its operation at night, negligent or not, was unforeseeable.

■ The court concludes that the jury's verdict, in so far as it is sought to be sustained on the theory of negligence, can not be upheld.

There was no evidence from which a conclusion of negligence causing the injury could reasonably have been drawn.

■ Defendant was not under an absolute duty to provide the plaintiff with a safe means of going ashore and returning to his ship beyond the ship's gangplank. A duty merely to use due diligence to provide reasonably safe means of egress and access beyond the gangplank would not serve the plaintiff, for the viaduct was certainly, in and of itself, reasonably safe, and due diligence with regard to it could not have prevented the negligent operation of the locomotive by a third party on the viaduct.

Though the defendant was duty-bound to provide reasonably safe means of immediate access to the vessel, Standard Oil Co. v. Robins Dry Dock & Repair Co., 2 Cir., 32 F.2d 182; see Biles v. United States, 1949 A.M.C. 875, 876, shipowners have generally been held not liable for unsafe conditions in places beyond the gangway not under their control when the seaman is there for his own purposes and not in the performance of his duties. Todahl v. Sudden & Christenson, supra; Walton v. Continental S.S. Co., supra; Lilly v. United States Lines Co., D.C.S.D.N.Y.1941, 42 F.Supp. 214; see Toyo Kisen Kaisha v. Hartman, 9 Cir., 1918, 253 F. 422, 424.

The suggestion that the Supreme Court's decisions in the O'Donnell and Aguilar cases indicate an extension of the shipowner's liability so as to include such situations was clearly rejected in Lemon v. United States, D.C., 68 F.Supp. 793, 1946 A.M.C. 1640. The court accordingly is forced to conclude that, at least as yet, it can not be held that the shipowner's liability extends to such situations.

No breach of any duty on defendant's part having been shown, and no evidence having been adduced from which a jury could reasonably have found the defendant negligent, the motion to set aside the verdict upon the plaintiff's cause of action for damages for his personal injuries, and to enter judgment for defendant, must be granted.

Proposed judgment in accordance with this opinion should be submitted.