The **PENNSYLVANIA RAILROAD CO.,**
a Corporation, Plaintiff,

v.

**M. K. W. CORPORATION,** a Corporation,
Defendant.

No. C 67–781.

United States District Court
N. D. Ohio, E. D.

July 17, 1969.

Jay E. Moyer and Charles F. Clarke, Cleveland, Ohio, for plaintiff.

Louis Paisley, Cleveland, Ohio, for defendant.

## FINDINGS OF FACT
## AND
## CONCLUSIONS OF LAW

CONNELL, District Judge.

The plaintiff in this case is the Pennsylvania Railroad Company, a corporation incorporated under the laws of Pennsylvania and a citizen of that state. The defendant is the M. K. W. Corporation, incorporated under the laws of the State of Ohio, and with its principal place of business in Ohio. Jurisdiction is based on diversity of citizenship and the matter in controversy exceeds the sum of ten thousand dollars, exclusive of interest and costs.

On February 6, 1957 the plaintiff and defendant entered into a written agreement providing for the construction, maintenance and ownership of certain track facilities known as "side tracks" located on the property of the defendant. Paragraph 7, of the agreement provided that the defendant, hereinafter referred to as the Industry:

"Shall at all times hereafter establish and maintain on its property a clear and safe space above and on each side of the side track sufficient to insure the safety of employees and equipment of the Railroad Company and the Industry shall indemnify and save harmless the Railroad Company from loss, damage and expense for failure so to do."

Paragraph 9 of the 1957 Agreement provides as follows:

"The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of Industry, its employees or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation while on or about the side track. If any claim or liability, other than from fire caused by locomotives as aforesaid, shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally. The Industry also agrees to indemnify and hold harmless the Railroad Company over the tracks of the Industry when such loss, damage or injury is due to any unsafe condition of the premises of the Industry."

While this agreement was in full effect, one George A. Van Camp, an employee of the Railroad was killed on November 15, 1966 while in the employ of the Railroad on the property of the Industry. The injury occurred while Van Camp was engaged in switching railroad cars out at track No. 77; such injury resulting in death. The sidetrack agreement of 1957 clearly states that track No. 77 along with track Nos. 69, 17, and 18 are within the express terms of the agreement. As a result of the injury and the ensuing death of Van Camp the Railroad agreed to pay Clara M. Van Camp, widow and administratrix of the estate of George A. Van Camp the sum of $31,000 in full and complete settlement. The plaintiff claims full reimbursement of the settlement due to the failure of the defendant to comply with paragraphs seven and nine of the 1957 agreement. The defendant denies failure to comply with the terms of the 1957 agreement.

The facts show that the entrance to the yard of the Industry in which the sidetracks run is bound by an iron gate which can be clearly seen and identified by defendant's Exhibit "A", which views the premises looking easterly into the spur tracks of the defendant. The yard is entered by a single track bending at an approximate 31 degree curve to the left. On both sides of the track is a walkway along which there is a switch which branches into two tracks, those being Track No. 17 South and No. 77 North. On the morning of November 15, 1966 the plaintiff entered the yard of the defendant for the purpose of removing the cars from the defendant's yard. The District Claims Agent who supervised the investigation of the accident stated that to his knowledge the Railroad kept the key to the defendant's yard. To permit the cars to enter the yard the gates were unlocked, opened into

the yard and secured to a railing. This situation permitted limited clearance on the walkway alongside the track that enters the yard; as clearly seen by plaintiff's Exhibit Nos. 12 and 14. Attached to the end of the gate on the right side of the track looking eastward is a "locking device" which can be clearly seen by plaintiff's Exhibit Nos. 10, 11 and 14. The entrance gate, while being opened into the yard and secured to the railing with the protruding locking device, further cuts down the clearance along the side of the track. A visible sign is posted on the fence stating; "Danger"; "Not Room Enough Here to Clear Man On Side Of Car." (D.X. "B").

Testimony disclosed that the defendant owned the gate and the locking device and maintained it.

Prior to the accident, at the direction of the engineer, the engine pulled the cars from the defendant's yard. The cars proceeded outward upon a signal from Van Camp, which he in turn received from another employee standing at the rear of the third car between track Nos. 17 and 77. As the cars proceeded out of the yard, the last of three cars was a D. & R. G. W. box car No. 63740. The employee, from whom Van Camp received his signal, testified that he was walking behind the last moving car, which was the D. & R. G. W., at the time of the accident. From that point, this employee saw Van Camp walking on the walkway alongside the moving cars, and then pass out of sight on the outside of the curve. The next time this employee saw Van Camp was after he had been struck by the train.

The decedent's body was lying alongside the track and apparently had been dragged approximately 27½ feet from the gate. The locking device on the gate limits the clearance between the end of the gate and the moving cars to between eleven and fifteen inches. (P. X. 11). As the cars pass from track No. 77 through the switch to the single track leading out of the yard, the front and back ends of the cars protrude outward and encroach upon the walkway cutting down the clearance between the car and the railing. It is in this area where the gate is secured to the railing that Van Camp was hit from behind by one of the moving cars. (P.X. 4). Testimony describes the cars as proceeding out of the yard at a moderate rate of speed of between one and three miles per hour. Testimony reveals that due to the fact that Van Camp was proceeding on the outside of the curve, the cars obstructed any possible view that either the engineer or the employee walking behind the last car could have had of Van Camp.

It is an established principle of law that an employer owes a duty to his employees to provide a safe place for them to work. With regard to the Federal Employers' Liability Act, the statute directs the Railroads to furnish a reasonably safe place for their employees to work. 45 U.S.C.A. § 51 et seq. This statute, as interpreted by Bridger v. Union Railroad Co., 355 F.2d 382, 386 (1966) states; "the rule does not contemplate absolute elimination of all dangers, but only the elimination of those dangers which could be removed by reasonable care on the part of the employer." The test of negligence, as interpreted in Gallick v. Baltimore & Ohio Railroad Co., 372 U.S. 108, 117, 83 S.Ct. 659, 9 L.Ed.2d 618 (1962) is the reasonable foreseeability of harm.

The fact that the injury and resulting death of an employee occurred on the property of someone other than the Railroad Company does not relieve the Railroad of liability to its employee. In Chicago Great Western Railway Co. v. Casura, 234 F.2d 441, 447 (1956) the Court states:

"The railway company made use of the premises as a place in which plaintiff was required to work and the mere fact that the railway company did not own and was under no primary obligation to keep this place in repair did not relieve it of the obligation to exercise reasonable care to fur-

nish plaintiff a reasonably safe place in which to work."

This statement of the law is further affirmed in Payne v. Baltimore and Ohio Railroad Company, 309 F.2d 546, 549 (1962) in which the Court states:

"Under FELA the employer is the one owing the duty to the employee. The employee need not look elsewhere for his protection. He has a right under FELA to rely on his employer and none other. When the employer delegates its duty, or abdicates its control, the employer takes the risk, not the employee."

■■ In the instant case, the sign was properly posted on the gate at the entrance to defendant's yard, such sign was more than sufficient to put the Railroad on notice as to insufficient clearance on the walkway between the railing and the moving cars. (D.X. "B"). This sign having been clearly visible for a sufficient period of time prior to the accident imposed a duty upon the Railroad to cease their operations until this condition was corrected. Furthermore, the fact that the employee himself knew of the unsafe condition will not give rise to non-liability on the part of the Railroad. In Ericksen v. Southern Pacific Co., 39 Cal.2d 374, 246 P.2d 642, 647 (1952) Court said:

"No exception is made when the employee also knows of the unsafe condition but has no alternative except to work in the place of danger. The benefits of the act are not to be withheld in contravention of the plain intent of the act and contrary to its application in other cases. To do so would be to permit employers, otherwise subject to the act, with impunity to require their employees to work in places of known danger, so long as the unsafe premises are not under the employer's direct control. In cases of known dangerous premises belonging to the third party, the absence of direct control does not absolve the defendant from liability under the act."

In light of the facts and the applicable law this Court is in agreement with the plaintiff's expert witness. This being the case the plaintiff was under an absolute duty to respond in damages to the estate of the decedent. Furthermore, since the amount of the settlement was not put in issue by the parties in suit, this Court is in concurrence with the plaintiff's expert and is of the opinion that the sum of $31,000 was a fair and equitable settlement.

This action is based upon an agreement executed, and to be performed in Ohio. Therefore the rights and duties of the parties shall be determined by Ohio law. In George H. Dingledy Lumber Co. et al. v. Erie Railroad Co., 102 Ohio State 236, 243, 131 N.E. 723, 725 (1921) states:

"It is a fundamental rule in the construction of contracts of indemnity that such contracts shall not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in clear and unequivocal terms."

■ It is at this time necessary to look closely at the contract in question. Paragraph 7 places a strong burden upon the defendant to establish and maintain on its property a clear and safe space above and alongside of its track, and failure to do so will give rise to liability for injury to the property and/or employees of the Railroad. The terms of this clause in the contract are very specific in contrast to Paragraph 9 which gives rise to liability on the part of the defendant for injury of any nature resulting from operation of the Railroad over the tracks of Industry. It must be observed that only in Paragraph 8 is it specifically stated that the Industry will hold the Railroad completely harmless for its negligence. It is the opinion of this Court, and in light of George H. Dingledy Lumber Co. v. Erie Railroad case that this Court will not dispense with the mandatory requirement of a definite provision of non-liability for negligence as a prerequisite to full indemnification

for the negligence of the Railroad Company.

The second sentence of Paragraph 9 directs the parties to the agreement to share the burden of compensation equally if liability arose "from the joint or concurring negligence of both parties."

In the present situation the Railroad is claiming full recovery under the contract of indemnity against the Industry. It is evident that if there exists any negligence on the part of Industry, their contention is that the knowledge the Railroad had before the accident concerning the unsafe clearances and their continued operation under these conditions, constituted acquiescence to the foreseeable danger and a complete bar to recovery from Industry. In light of the facts it is the opinion of this Court that the knowledge of the Railroad regarding this dangerous condition, their continued use of the side track, and the permitting of their employee to move about in an unsafe clearance constituted conduct of such a serious nature amounting to an absolute failure to maintain that standard of care necessary to insure the reasonable safety of its employees. Such conduct on the part of the Railroad was negligent, and shall constitute a bar to full recovery from Industry.

In this instance, Industry placed upon themselves by contract, in the specific language of Paragraph 7, the duty to provide adequate clearances above and on each side of the track. The evidence shows that by their own admission, that they did not establish and maintain safe clearances. (D.X. "B"). The agreement places a duty upon Industry to "hereinafter establish and maintain"; such language is interpreted as placing a continuing duty upon Industry to provide safe clearances along their track at the time of entering the agreement, and on into the future. In Ohio, contracts of indemnity are to be strictly construed. Kay v. Pennsylvania Railroad Co., 156 Ohio State 503, 103 N.E.2d 751 (1952). In this instance, the agreement placed upon Industry specific affirmative duties, one of which was to establish clearance along its track, if at the time the agreement went into effect they had not already done so. In construing this agreement strictly, the import of this language would necessarily bar any possible argument on the part of Industry as to the possible acceptance by the Railroad of the existing clearances prior to the agreement of February 6, 1957. Furthermore, the failure of Industry to maintain the required standards constituted a serious breach of duty imposed upon them by the agreement. The evidence shows that no safe clearance was ever established or maintained; such inactivity resulting in the death of Van Camp constituted a definite act of negligence on the part of the defendant. The placing of a sign on the gate giving notice to the Railroad and its employees could in no way constitute acts sufficient to relieve Industry of its duty under the agreement and absolve or even mitigate their negligence. In this situation Industry clearly failed to meet its obligations under the terms of the agreement. The Railroad, clearly aware of the possibility of serious injury to its employees, by its continued operation contributed to the negligent acts of Industry and gave its assent to the increased possibility of injury. Precisely the same contract, an almost identical fact situation, and the same conclusions of law can be seen in Pennsylvania Railroad Co. v. Erie Warehouse Co., 302 F. 2d 843 (1962).

It is the order of this Court that the liability incurred by the Railroad be borne equally by plaintiff and defendant pursuant to Paragraph 9 of the 1957 Agreement.

This opinion constitutes Findings of Fact and Conclusion of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.