William J. CARTER, Appellant,

v.

UNION RAILROAD COMPANY, a Corporation and General Motors Corporation, Fisher Body Division, a Corporation.

Nos. 18543, 18960.

United States Court of Appeals, Third Circuit.

Argued Nov. 19, 1970.

Decided Feb. 8, 1971.

Hastie, Chief Judge, concurred and filed opinion.

Paul F. Laughlin, Laughlin, Gilardi & Cooper, Pittsburgh, Pa., for appellant.

William L. Standish, Reed, Smith, Shaw & McClay, Pittsburgh, Pa. (Thomas R. Wright, Pittsburgh, Pa., on the brief), for appellees.

Before HASTIE, Chief Judge, and McLAUGHLIN, Circuit Judge.

## OPINION OF THE COURT

McLAUGHLIN, Circuit Judge:

Appellant, William J. Carter, was injured while traversing property of appellee General Motors Corporation (General Motors) enroute to the job site of his employment with appellee Union Railroad Company (Railroad). He brought suit against the railroad, under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. (FELA), and against General Motors, alleging common law negligence and basing jurisdiction on diversity of citizenship and amount in controversy. With regard to the FELA claim, appellant alleged that the railroad had failed to furnish him with a reasonably safe place in which to work.

At the close of appellant's case, the trial court granted the railroad's motion for a directed verdict, on the theory that Carter had failed to prove that he was within the scope of his employment when injured. Trial continued against General Motors, a verdict of $600 was returned, and a judgment entered thereon. A motion for a new trial was subsequently denied. On this appeal, the rulings of the trial court, directing a verdict in favor of the railroad and denying appellant's motion for a new trial against General Motors are challenged.

Appellant was part of a railroad crew whose starting point was a shanty located at the General Motors Curry-Hollow plant in West Mifflin, Pennsylvania. Because the crew reported to the General Motors plant each day, the president of the railroad had entered into an agreement whereby railroad employees could use the plant lot to park their cars.[1] The crew was notified of these

1. The agreement was in the form of a letter, which all parties concede constitutes a binding contract. It provided:
   "Dear Mr. Hughes:
   "We have a crew starting point located near the rear of your West Mifflin plant. It is my understanding

that you have agreed our employees reporting at this starting point will be permitted to drive their automobiles over a portion of your property and to park their automobiles on your property.
   "In consideration for the use of your property by Union Railroad Company

arrangements and though some employees utilized other parking areas, this lot was used by railroad crew members.

From the parking area it was necessary for an employee to pass through the main gate of the plant, turn right and walk along a dirt path, about 80 to 90 yards to the shanty.[2] The path ran alongside a cyclone fence and was unlit. The railroad exercised no control over the path, the sole responsibility for maintaining said property being General Motors'.

On the day of the accident, February 8, 1965, the path was slushy and muddy from rain. As Carter proceeded, the dirt slipped under his foot; he grabbed the fence to keep from falling, twisting his body as he did so, causing injuries to his lower back.

We are of the opinion that, under the circumstances presented, the trial court erred in directing a verdict for the railroad.

■ The first inquiry is whether, at the time of the accident, appellant was "employed" by the railroad.[3] The cases establish that the FELA applies not only when an employee is injured while actually engaged in the performance of his railroad duties but also when an employee is traversing the employer's premises and in some circumstances, premises adjacent to those of his employer on his way to or from his work. Bountiful Brick Company v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507 (1928); Erie R.R. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057 (1917);

Metropolitan Coal Company v. Johnson, 265 F.2d 173 (1 Cir. 1959); Sassaman v. Pennsylvania R.R. Co., 144 F.2d 950 (3 Cir. 1944).

■ Unlike Metropolitan Coal Company and Sassaman, supra, we are not here concerned with an injury to a railroad employee occurring long after he left the place of his employment or long before he arrived on the premises. Appellant was injured while enroute to his very job site from a parking lot provided for his use. Thus, he was clearly within the course of his employment. Bountiful Brick Company v. Giles, supra; Erie R.R. v. Winfield, supra; Mostyn v. Delaware, L. & W. R.R., 160 F.2d 15 (2 Cir. 1947), cert. denied, 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355 (1947).

While the parking lot used and the property crossed by appellant belonged to General Motors, the use thereof by railroad employees was within the expectations and intentions of the railroad. Appellant's employer went to great lengths to make the parking lot available to its employees. It agreed to indemnify General Motors for any liability the corporation might have suffered as a result of the lot's use by the railroad's crew. Furthermore, although several routes existed between the parking lot and the work shanty, each required the employee to cross General Motors' property.

■■ The FELA imposes upon the employer a non-delegable duty to use reasonable care to furnish his employees a safe place to work, Sano v. Pennsylvania R.R. Co., 282 F.2d 936 (3 Cir.

employees, the Union Railroad Company agrees to indemnify and hold harmless General Motors Corporation against any and all liabilities, claims, demands, suits and damages for injuries to and death of persons and damage to property caused by such use.
Very truly yours,
Union Railroad Company
By
President"

2. The record establishes that this was not the only route available, but there was testimony that railroad workers were told to use this path by General Motors' employees and by their own trainmaster.

3. 45 U.S.C.A. § 51 provides:
"Every common carrier by railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier * * *."

1960), and this duty extends beyond its premises and to property which third persons have a primary obligation to maintain. Shenker v. Baltimore & Ohio R.R. Co., 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963); Nivens v. St. Louis Southwestern Ry. Co., 425 F.2d 114 (5 Cir. 1970), cert. denied, 400 U.S. 879, 91 S.Ct. 121, 27 L.Ed.2d 116 (1970); Payne v. Baltimore & Ohio R.R., 309 F.2d 546 (6 Cir. 1962), cert. denied, 374 U.S. 827, 83 S.Ct. 1865, 10 L.Ed. 2d 1051 (1963); Kooker v. Pittsburgh & Lake Erie R.R., 258 F.2d 876 (6 Cir. 1958); Chicago Great Western Ry. v. Casura, 234 F.2d 441 (8 Cir. 1956). This duty includes a responsibility to inspect the third party's property for hazards and to take precautions to protect the employee from possible defects, and is separate and distinct from any negligence that may be attributable to General Motors. Shenker v. Baltimore & Ohio R.R., supra; Nivens v. St. Louis Southwestern Ry., supra. In Kooker v. Pittsburgh & Lake Erie R.R., supra, the Court held that the railroad could be held to have breached its duty to provide a safe place to work where its employee was injured while walking from a parking lot to his job site, despite the fact that he may have been on property of a third person.

■■ A second theory also supports a finding of liability against the railroad. In Carney v. Pittsburgh & Lake Erie R.R., 316 F.2d 277 (3 Cir. 1963), cert. denied, 375 U.S. 814, 84 S.Ct. 45, 11 L.Ed.2d 49 (1963), this Court held a railroad liable for injuries sustained in a Y.M.C.A. because the railroad arranged for its employees to stay at the "Y" and such was "part of the operational activities of the railroad." See also Sinkler v. Missouri Pacific R.R., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958). The same must be said of the parking lot and adjacent area in the case sub judice. Its use was more than an accommodation and convenience to the employee. Its availability assured the railroad that its crew members would have a safe place to park their vehicles, a location near enough to allow the employees to arrive at work on time. Nor was the use of the parking lot and the adjacent General Motors' property an isolated occurrence. The railroad crew was on the premises for the exclusive purpose of servicing the General Motors plant at Curry-Hollow. Carter testified that he used the lot and followed the path in question every day for a three month period, as did other railroad employees. The arrangement between the railroad and General Motors providing for use by railroad employees of the corporation's property came within the operational activities of the railroad at the Curry-Hollow job site. Hopson v. Texaco, Inc., 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966); Leek v. Baltimore & Ohio R.R., 200 F.Supp. 368 (N.D.W.Va. 1962). Thus, General Motors was the statutory agent of the railroad under § 1 of the FELA, 45 U.S.C. § 51 and any negligence attributable to General Motors would be imputed to the railroad. Nivens v. St. Louis Southwestern Ry., supra; Carney v. Pittsburgh & Lake Erie R.R., supra. In Payne v. Baltimore & Ohio R.R., 309 F.2d 546, 549 (6 Cir. 1962), the Court stated:

> "If [the railroad] does delegate and relies upon the services of its agent to carry out its own duty, it may not shift its liability from itself to said agent when an employee seeks to hold it directly liable. Under FELA the employer is the one owing the duty to the employee. The employee need not look elsewhere for his protection. He has a right under FELA to rely on his employer and none other. When the employer delegates its duty, or abdicates its control, the employer takes the risk, not the employee."

From the facts presented and under the prevailing law, it was error for the trial judge to direct a verdict in favor of the railroad.

■ In view of the fact that the duty of the railroad and the negligence of

General Motors are so interrelated, we are of the opinion that the verdict against General Motors cannot stand. The removal of the railroad from the case seriously prejudiced appellant. Had the railroad remained, the proofs against this party would have been submitted to the jury on the theory that the railroad had breached its statutory duty or was responsible for the negligence of General Motors. The appellant's contributory negligence would not bar recovery, as charged by the trial court, 45 U.S.C. § 53. Also, the standard of care imposed is not as strict as that set forth in §§ 343 and 343A of the Restatement (Second) of Torts, which was charged by the trial court.[4] Though a possessor of land is responsible for harm caused to a business invitee only if a condition exists which the owner expects the invitee will not discover or realize, this is not the situation under the FELA. The doctrine of assumption of risk is eliminated by that statute. 45 U.S.C. § 54; Pennsylvania R.R. Co. v. M.K.W. Corp., 301 F.Supp. 991 (N.D. Ohio 1969).

Nor will General Motors be subjected to additional liability in the event of a new trial. Although the corporation makes extensive argument addressed to a possible liability by virtue of indemnification to the railroad, it would be necessary for the Court to close its eyes to the realities of the claim to accept this position. General Motors bears no responsibility for any damages recovered by appellant. The parties stipulated that the agreement between the corporation and the railroad was binding, and several references thereto were made in the course of the trial. The complaint filed alleged joint responsibility but no claim for contribution or indemnification was filed by either of the defendants below. Actually, the two were represented by the same counsel at trial and on appeal. Under these circumstances, vacation of the judgment against General Motors will not seriously prejudice it.

For the reasons stated herein, the directed verdict in favor of the railroad will be reversed, the judgment against General Motors vacated and the matter remanded for new trial in the district court.

HASTIE, Chief Judge (concurring).

I join in the decision announced by Judge McLaughlin. But for reasons stated in my dissent in Carney v. Pittsburgh and Lake Erie R.R., 3d Cir. 1963, 316 F.2d 277, 282, I do not agree with Judge McLaughlin's alternative theory of liability; namely, that by providing a convenient parking lot for railroad employees, the defendant General Motors Corporation became an agent engaged in "operational activities of the railroad."

---

4. Section 343:
"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger."
Section 343A:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated."