**Georgia MILES, Plaintiff,**

v.

**STATES MARINE LINES, INC.,
Defendant.**

**Civ. No. 6294.**

United States District Court,
E. D. Texas,
Beaumont Division.

April 21, 1971.

John N. Barnhart, Mandell & Wright, Houston, Tex., for plaintiff.

George E. Duncan, Walter J. Crawford, Jr., Wells, Duncan, Beard, Greenburg & Hunt, Beaumont, Tex., for defendant.

## MEMORANDUM OPINION

JOE J. FISHER, Chief Judge.

This cause of action for damages resulting from the death of Willie Miles and for his pain and suffering up to the time of his death was filed by Georgia Miles, widow of the deceased, and American National Bank of Beaumont, temporary administrator of the estate of Willie Miles, against States Marine Lines, Inc., owner and operator of the SS BLUE GRASS STATE, a vessel in maritime commerce and employer of Willie

Miles. Jurisdiction of the court is based on the Jones Act, 46 U.S.C.A. § 688, and on the general maritime law of the United States, Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L. Ed.2d 339 (1970).

On October 12, 1968, the vessel on which decedent was employed as a seaman was anchored off Manila Bay, Philippine Islands, about a mile and a half from shore, for the purpose of taking on fuel and water. Shore leave was granted to members of the crew, but the place of anchorage had no ship-to-shore launch service nor was such a launch available. The only means for going ashore were native outrigger canoes at a cost of $2.-00 for which reimbursement was allowed. Willie Miles went ashore, and after spending some time he proceeded to return to his vessel on board an outrigger canoe with four other crew members. Before the canoe reached the vessel, it capsized and Willie Miles met his death by drowning.

Plaintiff contends that through the negligence of Defendant and/or because of the unseaworthiness of the SS BLUE GRASS STATE in not providing safe ship-to-shore transportation, Willie Miles lost his life. Defendant denies unseaworthiness and negligence and contends that the decedent drowned either solely by his own negligence, or his own negligence contributed to cause his injury and that recovery of damages should be reduced proportionately. Further, the Defendant contends that the outrigger was boarded by decedent while outside the course and scope of his employment and while engaged in his own personal activities ashore and that it was operated by native Filipinos who were acting as independent contractors in transporting him, and any negligence of the outrigger which the decedent voluntarily boarded is not imputable to the Defendant. Also, Defendant alleges that Plaintiff has failed to prove any pecuniary loss as the result of the death of Willie Miles since he did not contribute to her support in the years immediately preceding his death and Plaintiff made no attempt to compel him to do so.

■ As evidence of unseaworthiness, Plaintiff claims that Defendant's anchorage was unfit for crewmen to go ashore in that no suitable launch was available for transport. While the evidence does indicate that no arrangements were made between Defendant, its master, and employees as to the use of a vessel, the Court is unable to find any requirement in the record that such provisions be made. To the contrary, under the provisions of the collective bargaining agreement in effect and applicable in ports where regular boat service was not available, members of the crew could make their own arrangements for transportation and the company agreed to reimburse them.[1] It is therefore clear that Willie Miles could and did make his own arrangements for such transportation, as was provided in the contract, and that Defendant had no responsibility for the type vessel obtained.

■ Plaintiff further contends that the vessel was unfit for rescue operations and that radio communications were inadequate to initiate rescue. The record, however, reveals that the captain of the SS BLUE GRASS STATE did enact the following rescue procedure when he learned that the canoe had overturned. The service launch RACQUELL guarding the water barge on the starboard side of the ship was sent to the point where the outrigger canoe had capsized to pick up the crewmen who had fallen into the water. When it was learned that Willie Miles was missing, the captain of the motor launch was instructed to return to the area where the

---

1. Working Agreement between Various Companies and Agents (Atlantic and Gulf Coasts) and the National Maritime Union of America, Article 1, Section 33, which reads in part:
    "In port where regular boat service is not available, members of the crew may make their own arrangements for transportation and the Company agrees to reimburse either the crew members or the owner of the boat up to two dollars ($2.00) per round trip per man carried once each twenty-four (24) hours."

canoe had swamped to look for him. After the motor launch had searched for two hours in the area where the accident occurred and had failed to locate the deceased, another motor launch, the SAN FAVIAN, was sent on the same search mission. It was only late in the afternoon when the results of that search were negative that the captain concluded the search operations for the day.

■ In light of the above facts, the Court is of the opinion that the evidence submitted does not in any way prove that Defendant's vessel was unseaworthy, but rather it has been established that the vessel SS BLUE GRASS STATE was seaworthy, the general test being whether the vessel is reasonably fit to perform the service which she has undertaken to perform.[2] There being no basis for the unseaworthiness count, we next consider the issue of negligence under the Jones Act, 46 U.S.C.A., Section 688.[3] Was the Defendant under a duty to provide the Plaintiff, while on shore leave a safe means of transportation from the vessel to shore and back? As early as 1925 the 9th Circuit considered this question in the case of Todahl v. Sudden & Christenson, 5 F.2d 462, and ruled that the shipowner's duty to provide a safe place to work does not extend beyond the ship. Although this issue has never been expressly decided in this circuit, other courts have reaffirmed the 9th Circuit rule. See Paul v. United States, 205 F.2d 38 (3rd Cir., 1953); Wheeler v. West India S.S. Co., 103 F.Supp. 631 (S.D.N.Y.1951), aff'd 205 F.2d 354 (2nd Cir. 1952); Lemon v. United States, 68 F.Supp. 793 (D.Md. 1946).

■■ The cases relied on by Plaintiff on this issue are all distinguishable from the instant case, and the Court feels that Plaintiff has not been able to cite any authority, nor have we been able to find any, that imposes a duty on a ship anchored away from the dock to provide transportation to and from shore to members of the crew who have been granted shore leave. Although we find that the decedent was in the course and scope of his employment when he was injured, see Braen v. Pfeifer Oil Transportation Co., 361 U.S. 129, 80 S. Ct. 247, 4 L.Ed.2d 191 (1959),[4] it is clear under the facts that decedent was ashore on business of his own and was free to choose any means of transportation available in order to return to the SS BLUE GRASS STATE. The decision as to what type of launch or how the launch was to be manned was not a responsibility to have been determined by the officers of the vessel so as to involve or impose any liability on the vessel. See Wheeler v. West India S.S. Co., supra, 103 F.Supp. p. 634.[5]

■ Further, we are of the opinion that even if the evidence would permit a finding of liability on the basis of Defendant's negligence or the unseaworthiness of the SS BLUE GRASS STATE, the Plaintiff's recoverable damages would at best be very nominal. The Plaintiff and the deceased married and lived together until 1964, at which time they were separated. Plaintiff admitted that she had not received any allotments from deceased since the date of their separation and that whatever support she had received was from other sources.

2. Well established by case law, the Fifth Circuit used this definition recently in Texas Menhaden Co. v. Johnson, 332 F. 2d 527 (1964).

3. "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law."

4. The Supreme Court stated that a seaman is as much in the service of his ship when boarding it on first reporting for duty, quitting it on discharge, or going to and from the ship while on shore leave, as he is while on board at high sea.

5. "Though the defendant was duty-bound to provide reasonably safe means of immediate access to the vessel, (citations omitted), shipowners have generally been held not liable for unsafe conditions in places beyond the gangway not under their control when the seaman is there for his own purposes and not in the performance of his duties."

The Plaintiff correctly contends that these facts have no relevance to a widow's recovery under the Jones Act. Civil v. Waterman Steamship Corp., 217 F. 2d 94 (2nd Cir., 1954).[6] In Orona v. Isbrandtsen Co., 313 F.2d 241 (2nd Cir., 1963), a case similar in facts to our case, the court discussed the leading cases and held a widow was not barred from recovery by the fact that her seaman husband did not contribute to her support during the five years immediately preceding his death, she having made no attempt to compel him to do so, and further held that the trial judge had acted properly in considering the extent of the seaman's past contributions to his spouse as bearing on the issue of damages.

Based on the findings of fact and conclusions of law stated herein, Georgia Miles and the American National Bank are not entitled to recover on this cause of action against States Marine Lines. Final judgment will be entered in accordance herewith.

---

6. In that case, the court stated that dependency is not a prerequisite to recovery and allowed the widow substantial damages. However, Civil is distinguishable from the instant case in that the widow there had attempted to pursue her husband for support.