**Theodore O. BATES, Plaintiff,**

v.

**PRUDENTIAL-GRACE LINES, INC.,
Defendant.**

**Civ. No. 9623.**

United States District Court,
W. D. Washington.

Aug. 17, 1972.

Thomas M. Geisness, McCutcheon, Groshong, Bettis, Geisness & Day, Seattle, Wash., for plaintiff.

H. Graham Gaiser, Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for defendant.

MEMORANDUM OPINION SUPPORTING THE COURT'S AMENDED JUDGMENT OF AUGUST 1, 1972.

LINDBERG, District Judge.

On August 1, 1972 this Court entered the following amended judgment in the above entitled matter:

This cause came on to be heard on defendant's motion to set aside the jury verdict and judgment for plaintiff, and to order judgment for defendant, and in the alternative for a new trial, and the court having considered the evidence and the arguments of counsel and being fully advised, it is now

ORDERED, ADJUDGED and DECREED that the jury's verdict of February 24, 1972, in favor of plaintiff, and the judgment dated March 16, 1972, entered upon said verdict be, and hereby is, set aside and that judgment be, and hereby is, entered in favor of defendant, dismissing plaintiff's Complaint with prejudice and awarding defendant its taxable costs in the amount of $387.30 and denying motion for new trial.

The following memorandum opinion briefly outlines the pertinent facts, which I believe are undisputed, and sets forth the reasons for the entry of the amended judgment granting defendant's motion for judgment notwithstanding the verdict.

The jury in this admiralty case returned a verdict of $85,500 for personal

injuries suffered by plaintiff while employed as a seaman in the service of defendant's vessel, the SS SANTA REGINA. The accident giving rise to the suit occurred on August 8, 1970, while the vessel was moored to a pier in the Port of Antofagasta, Chile. Plaintiff left the vessel during daylight on that date and proceeded across the pier with the intention of going into town on a personal errand. After he had traveled some 400 to 600 feet and while he was hurrying to overtake several other seamen, including the captain, he stepped into a hole in the pier, thereby receiving the injuries for which he sought compensation in this Court. At the time of the accident, the pier was owned, operated and controlled by the Chilean government.

Defendant has moved for judgment notwithstanding the verdict and in the alternative for a new trial.

Plaintiff's claim originally was predicated on both negligence and unseaworthiness. The Court, however, submitted the case to the jury only on the basis of the alleged negligence under the Jones Act [1] and, more specifically, on the alleged failure of defendant to exercise reasonable care to provide plaintiff with a reasonably safe place to work.[2] Though the jury was not so instructed, such a duty in this case, where defendant had no control over the pier, could require at most inspection of the pier and a warning to the crew. Defendant's principal assertion in support of its motion for judgment is that this duty does not extend to a seaman while he is beyond the gangway for personal reasons and in an area neither owned nor controlled by the vessel owner.

The question presented is not one of first impression in this Circuit. As defendant points out, the Ninth Circuit held in Todahl v. Sudden & Christenson, 5 F.2d 462 (9th Cir. 1925), that similar factual allegations were insufficient to withstand a demurrer by the owners of the vessel. In that case, the seaman alleged that he was returning to his ship at night after having made a trip into town for personal reasons when he fell into a space between the wharf and bumpers which protected the wharf from the ships. The wharf was neither owned nor controlled by the owners of the vessel. The sustaining of the demurrer was upheld on two grounds: first, admiralty jurisdiction under the Jones Act did not extend to torts committed on land; [3] and second, the substantive duty of a vessel owner to provide a seaman with a safe place to work did not "extend to his protection when going beyond the premises of his employment for purposes of his own and over premises of which his employers had no dominion or control." *Todahl* at 464.

The first ground relied upon by the *Todahl* court was an expression of the old locality rule which clearly has been vitiated by the Extension of Admiralty Jurisdiction Act of 1948. This Act broadened the admiralty jurisdiction to include injuries "caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."[4] There is no indication, however, that the Act had any effect on the second ground relied upon in *Todahl*, other than the obvious one of giving the admiralty court the power to adjudicate a cause of action which arises

---

1. 46 U.S.C. § 688.

2. See West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959), where the Court states, " . . . one aspect of the shipowner's duty to refrain from negligent conduct is embodied in his duty to exercise reasonable care to furnish a safe place to work."

3. The Court implicitly assumed that a pier is an extension of the land for jurisdictional purposes. This assumption was expressly affirmed in Swanson v. Marra Bros., Inc. 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946), and T. Smith & Sons, Inc. v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928).

4. 46 U.S.C. § 740; Cf. Gebhard v. SS Hawaiian Legislator, 425 F.2d 1303, 1306 (9th Cir. 1970).

from the alleged breach of a substantive duty which itself extends beyond the gangway. Therefore, unless the precedent established by *Todahl* has been abrogated by subsequent cases, defendant's motion for judgment notwithstanding the verdict must be granted.

The Ninth Circuit has given no indication whether it would follow *Todahl* today. Other circuits which have addressed the same issue, however, have followed *Todahl* without exception. In Paul v. United States, 205 F.2d 38 (3d Cir. 1953), cert. denied, 346 U.S. 888, 74 S.Ct. 140, 98 L.Ed. 392, the Third Circuit posed the question "whether there was a duty on the part of the shipowner to inspect the dock area owned and controlled by a third party before granting shore leave to crew members and to give warning of any hazards." *Paul*, at p. 41. It analogized the question to that arising in nonmaritime master-servant law where an employer sends his employee onto the property of a third person to perform work. Finding no duty of inspection in such nonmaritime situations, the Court found none where a seaman voluntarily leaves his vessel on shore leave and is subsequently injured by some defect in the dock. This conclusion was reaffirmed in Hagans v. Ellerman & Bucknall Steamship Company, 318 F.2d 563, 579 (3d Cir. 1963).

The Second Circuit also has followed the general rule of *Todahl*. In Wheeler v. West India SS Co., 205 F.2d 354 (2d Cir. 1953), the Court of Appeals in a per curiam opinion adopted the opinion of the District Court for the Southern District of New York which noted:

Though the defendant was duty-bound to provide reasonably safe means of immediate access to the vessel (citing authority), shipowners have generally been held not liable for unsafe conditions in places beyond the gangway not under their control when the seaman is there for his own purposes and not in the performance of his duties.[5]

The Southern District of New York again cited *Todahl* favorably in both Dangovich v. Isthmian Lines, Inc., 218 F.Supp. 235, 237 (S.D.N.Y.1963), aff'd 327 F.2d 355 (2d Cir. 1964), and D'Costa v. United States Lines Company, 227 F.Supp. 180 (S.D.N.Y.1964). Both cases are factually distinguishable but do support the continued validity of *Todahl*.

District courts in the Fourth and Fifth Circuits have cited *Todahl* and denied recovery for seamen under even more compelling circumstances than are present in the case now before this Court. In both Lemon v. United States, 68 F.Supp. 793 (D.Md.1946), and Miles v. States Marine Lines, Inc., 325 F.Supp. 1370 (E.D.Tex.1971), seamen were killed while attempting to return by small boat to their ships which were anchored off shore. The courts found that the shipowners had no duty to provide a means of transportation between ship and shore for seamen granted shore leave. It followed that the shipowners were not liable for any negligent injury to seamen who arranged their own transportation.[6]

The plaintiff has cited one recent district court case from the Third Circuit, Hamilton v. Marine Carriers Corp., 332 F.Supp. 223 (E.D.Pa.1971)[7] which departs from the rule announced in *Todahl* as followed by the Court of Appeals for the Third Circuit in cases cited earlier

---

5. 103 F.Supp. 631, 634 (S.D.N.Y.1951).

6. The Supreme Court also gave some support to the holding in *Todahl* in Aguilar v. Standard Oil Co. of New Jersey, 318 U.S. 724, 736, 737, 63 S.Ct. 930, 937, 87 L.Ed. 1107 (1943), when it stated:
   Consequently the fact that the shipowner might not be liable to the seamen in dam-

ages for the dockowner's negligence, cf. Todahl v. Sudden & Christenson, 9 Cir., 5 F.2d 462 (C.C.A.), does not relieve him of his duty of maintenance and cure.

7. The plaintiff in that case alleged that he stepped into an ice covered hole in a pier, which appeared to him to be solid, several hundred feet from the gangway of his ship

in this opinion. However, until such time as the Court of Appeals for this Circuit modifies the *Todahl* rule, should it do so, this court believes it applicable and controlling under the facts as established by the record in this case. Judgment for defendant as entered on August 1, 1972 is in accord with said rule.

The Court denied defendant's alternative motion for new trial primarily because of the Court's firm conviction that under the *Todahl* rule the motion for a directed verdict should have been granted.

In the event the Court of Appeals should modify the *Todahl* rule and set aside the Court's judgment of August 1, 1972 defendant's alternative motion for a new trial should, I believe, have further consideration either by the Court of Appeals or by the district court upon remand.

while returning from a personal excursion into town. The court denied defendant's motion for summary judgment and in doing so accepted plaintiff's version of the facts as an accurate reflection of events surrounding the accident. The court found that plaintiff's allegations stated a claim and offered two bases for its conclusion. First, it found that the owner of the pier conceivably was an agent of the shipowner. Second, it found that the duty of a shipowner to provide a seaman a safe place to work extends to the pier even when the seaman is there for his own purposes and the shipowner has no control over the premises.

The district judge in his opinion first reviewed most of the cases cited earlier in this opinion and recognized the rule which they followed. He then went on to examine briefly two FELA cases, Carter v. Union Railroad Company, 438 F.2d 208 (3d Cir. 1971), and Shenker v. Baltimore & Ohio R. R. Co., 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963), and to conclude that these cases impliedly had overruled the *Todahl* rule as adopted in the Third Circuit by *Paul*.

Although I recognize that this conclusion has some merit I cannot give it great weight. First, I cannot conclude that either *Carter* or *Shenker* was intended to abrogate such a well established rule. Second, the case may be distinguished from the situation presented here in that in *Hamilton* the district court denied defendant's motion for *summary judgment* and in doing so stated:

> Since the jury must decide (1) whether defendant used reasonable care to furnish a safe means of ingress and egress in this case and (2) whether the defendant used reasonable care to inspect the pier and correct or warn of any possible dangers, summary judgment for the Jones Act claim based on defendant's negligence also must be denied.

Denial of a defendant's motion for summary judgment before trial presents a substantially different situation than a motion notwithstanding the verdict after all the evidence has been submitted to and considered by the jury. Third, the ice covered hole that *Hamilton* fell into presented a hidden trap whereas in the present case the hole was clearly visible to anyone who was observing the path he was walking.