**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 17 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DANNY E. CAMPBELL,

Plaintiff-Appellant,

v.

DELMA ANN, LLC, an Oregon Limited
Liability Company; RICHARD W. WOOD,

Defendants-Appellees.

No.   23-35088

D.C. No. 6:20-cv-00591-MC

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted December 5, 2023
Portland, Oregon

Before:  NGUYEN and MILLER, Circuit Judges, and MONTALVO,[**] District
Judge.

Danny Campbell appeals from the district court's order granting summary

judgment to the defendants, Richard Wood and Delma Ann, LLC (together, Delma

Ann), on his claim under the Jones Act. We have jurisdiction under 28 U.S.C.

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Frank Montalvo, United States District Judge for the
Western District of Texas, sitting by designation.

§ 1291, and we affirm.

We review de novo the district court's grant of summary judgment. *See Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). "Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

Campbell was employed as a deckhand and crew member of the fishing vessel *Delma Ann*. He was injured when, while taking out garbage from the ship, he tripped over a chain on a floating dock walkway at the Port of Newport.

To recover under the Jones Act, a plaintiff must establish (1) that he is a seaman, (2) that he suffered an injury in the course of his employment, (3) that his employer or an agent of his employer was negligent, and (4) that the employer's negligence at least in part caused the injury. *See Ribitzki v. Canmar Reading & Bates, Ltd. P'ship*, 111 F.3d 658, 662 (9th Cir. 1997); 46 U.S.C. § 30104. At issue here is whether Delma Ann was negligent, and, in particular, whether it breached any duty to Campbell.

1. Delma Ann's duties to provide Campbell a safe place to work and warn of hazards did not extend to the floating dock walkway. In *Todahl v. Sudden & Christenson*, we held that such duties "d[o] not extend to [a seaman's] protection

2

when going beyond the premises of his employment for purposes of his own and over premises of which his employers had no dominion or control." 5 F.2d 462, 464 (9th Cir. 1925). Under *Todahl*, a Jones Act employer is not liable for injuries occurring on premises over which it has no dominion or control. *See Bates v. Prudential-Grace Lines, Inc.*, 375 F. Supp. 774, 775, 777 (W.D. Wash. 1972), *aff'd*, 497 F.2d 900 (9th Cir. 1974). Here, the Port exclusively owned and operated the floating dock walkway. Delma Ann had no responsibility for the maintenance of the slip or authority to remove the chain or alter its placement.

As Campbell notes, we held in *Ribitzki* that the duty to provide a safe place to work "extends to . . . *the ship of a third party* over whom the employer has no control, if that is where the seaman's employer sends him to work." 111 F.3d at 662 (emphasis added). But the "ship of a third party" in *Ribitzki* was the "place to work" relevant to the employer's duty, since the employer was an independent contractor. *See* 111 F.3d at 663. Thus, *Ribitzki* simply stands for the proposition that a lack of control alone cannot eliminate a "place to work" altogether, which would render meaningless the duty to provide a "safe place to work." The *Delma Ann* was Campbell's "place to work," and *Todahl* continues to govern here.

Campbell argues that *Todahl*'s "dominion or control" holding was superseded by *O'Donnell v. Great Lakes Dredge & Dock Company*, in which the Supreme Court held that "the admiralty jurisdiction over the suit depends not on

3

the place where the injury is inflicted but on the nature of the service and its relationship to the operation of the vessel." 318 U.S. 36, 42–43 (1943). Campbell reads that language as establishing a nondelegable duty to provide seamen a safe place to work even on premises owned and operated by a third party. But *O'Donnell* overruled only *Todahl*'s first holding, which limited the scope of maritime tort jurisdiction to injuries occurring at sea. *See Todahl*, 5 F.2d at 464. It left undisturbed *Todahl*'s "dominion or control" holding, which applies regardless of the situs of the injury. *See id.*; *Bates*, 375 F. Supp. at 775.

Campbell further argues that even if *Todahl* is good law, it is distinguishable because the seaman in *Todahl* was injured while engaged in personal activities on shore leave, whereas Campbell was performing his duties as a deckhand by removing garbage from the vessel. The Supreme Court explained in *Aguilar v. Standard Oil Company of New Jersey*, however, that lack of dominion or control can absolve an employer of Jones Act liability even when the seaman acts for purposes of his employer. 318 U.S. 724, 736–37 (1943). That Campbell was injured while performing his employer's duties does not make *Todahl* inapplicable here.

2. Campbell argues for the first time on appeal that Delma Ann is liable for the Port's negligence in installing and maintaining the chain. Because Campbell did not raise that argument before the district court, it is forfeited. *See Momox-*

*Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021). In any event, the argument fails on the merits. For the negligence of a third party to be imputed to an employer, the party must "perform[], under contract, operational activities of [the] employer," or, in other words, activities that constitute "a vital part of the ship's total operations." *Hopson v. Texaco, Inc.*, 383 U.S. 262, 264 (1966) (quoting *Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 331–32 (1958)). Delma Ann did not delegate any activities, much less vital operational activities, to the Port. The slip rental agreement with the Port expressly precluded the Port from performing any duties on Delma Ann's behalf. Merely allowing the *Delma Ann* to be moored at the Port does not constitute the performance of a vital operational activity.

**AFFIRMED.**