SZOPKO v KINSMAN MARINE TRANSIT COMPANY

Docket No. 74646. Argued March 4, 1986 (Calendar No. 5). Decided
December 17, 1986. Rehearing denied 428 Mich 1201.

Frank J. Szopko, a seaman, brought an action in the Wayne
Circuit Court against Kinsman Marine Transit Company, his
employer, seeking damages under the Jones Act for injuries
suffered when he slipped on a dock while returning to his ship.
The court, Gilbert Zitzelsberger, J., entered judgment on a jury
verdict for the plaintiff, reduced by a finding of thirty-five
percent comparative negligence. The Court of Appeals, T. M.
Burns, P.J., and Wahls and Hood, JJ., affirmed in an unpub-
lished opinion per curiam (Docket No. 64766). The defendant
appeals.

In an opinion by Justice Cavanagh, joined by Chief Justice
Williams and Justices Brickley, Boyle, and Riley, the Su-
preme Court *held:*

For purposes of a Jones Act claim, a seaman is in the course
of employment if doing the work of an employer pursuant to
the employer's orders or when the nature of the service ren-
dered and its relation to the operation of the vessel is of such
nature that a seaman may be deemed in the course of employ-
ment. In this case, the courts below erred in failing to direct a
verdict in favor of the defendant because the plaintiff was not
in the course of his employment at the time of the injury.

1. A seaman is entitled to bring an action for damages
against an employer under the Jones Act if personal injury is
suffered in the course of employment and the injury is caused
in some way by the employer's negligence. The location of the
injury may have a bearing on the employer's negligence in
determining whether the employer owed the plaintiff a duty of

REFERENCES

Am Jur 2d, Admiralty §§ 190-193.

Am Jur 2d, Federal Employers' Liability and Compensation Acts
§§ 41-47.

Seaman as injured "in the course of his employment" for purposes
of the Jones Act—Federal cases. 4 L Ed 2d 1777.

Recovery, under Jones Act or seaworthiness doctrine, by seaman or
maritime worker injured in boarding or leaving ship. 8 ALR3d
505.

reasonable care under the circumstances. However, recovery under the act does not depend upon the location of the injury, but instead upon the nature of the service and its relationship to the operation of the vessel.

2. In this case, the plaintiff was not in the course of his employment at the time of the injury; he was off duty and returning from a clearly personal excursion. The plaintiff was injured on a dock owned and operated by a separate company which was solely responsible for the area in which the injury occurred. No evidence of control over the dock by the defendant was shown, and thus no duty of care was owed by the defendant under the facts in this case. A seaman is not necessarily in the course of his employment when leaving or returning to his vessel. An employer's duty to provide a seaman with a safe place to work does not extend beyond the immediate vicinity of the gangway when the seaman is not in the performance of his duties.

Justice LEVIN, concurring, stated that a seaman returning from shore leave is in the course of his employment under the Jones Act.

Reversed.

Justice ARCHER, dissenting, stated that the term "course of employment" under the Jones Act is equivalent to the "in the service of the ship" formula used in maintenance and cure cases. By reason of the unique nature of the employment, a seaman is considered to be on the shipowner's business while enjoying shore leave because such leave, with its attendant relaxation, is a necessary and beneficial remedy for the confinement and discipline to which the seaman is subjected while aboard ship. There is no valid reason why, for purposes of determining the shipowner's liability under the Jones Act, a seaman on leave who slips and falls on the dock while returning to the ship should not be considered to be in the course of employment. If a seaman on shore is in the course of employment for purposes of Jones Act coverage, it seems contradictory to limit the shipowner's liability for negligence to the end of the gangplank; such a strict delineation of the employer's duty renders irrelevant the fact that a seaman is in the course of employment even though off the ship.

OPINION OF THE COURT

1. ADMIRALTY — JONES ACT — COURSE OF EMPLOYMENT.

A seaman is in the course of employment if doing the work of an employer pursuant to the employer's orders or when the nature of the service rendered and its relation to the operation of the

vessel is of such nature that a seaman may be deemed in the course of employment (46 USC 688).

2. ADMIRALTY — JONES ACT — NEGLIGENCE.

An employer's duty to provide a seaman with a safe place to work does not extend beyond the immediate vicinity of the gangway when the seaman is not in the performance of his duties (46 USC 688).

3. ADMIRALTY — JONES ACT — DAMAGES.

Recovery under the Jones Act does not depend upon the location of the injury, but instead upon the nature of the service and its relationship to the operation of the vessel; the location of an injury may have a bearing on an employer's negligence, however, in determining whether the employer owed the plaintiff a duty of reasonable care under the circumstances (46 USC 688).

*The Jaques Admiralty Law Firm, P.C.* (by *Robert E. Swickle*), for the plaintiff.

*Foster, Meadows & Ballard* (by *John A. Hamilton*) and *Andich & Belgrade* (by *Steven B. Belgrade* and *David W. Andich*) for the defendant.

CAVANAGH, J. This case plunges the Court into the depths of uncharted waters—federal admiralty law.[1]

### FACTS

Plaintiff Szopko was a crew member of the S. S. Buckeye Monitor, a Great Lakes freighter owned by defendant Kinsman Marine. The vessel was docked at Conneaut, Ohio, to unload a cargo of taconite pellets. Pittsburgh and Conneaut Dock Company owned and operated the dock and was

---

[1] We have reviewed claims brought under the Jones Act before, but none of the cases involved the issues before us today. For example, in *Manion v State Hwy Comm,* 303 Mich 1; 5 NW2d 527 (1942), plaintiff's claim was dismissed on the basis of governmental immunity. Similarly, a jury verdict was reversed on the basis of insufficient evidence in *King v Nicholson Transit Co,* 329 Mich 586; 46 NW2d 389 (1951).

responsible for the unloading operation. The dock company is not a party in this case.

The Buckeye Monitor's cargo was unloaded by a conveyor belt system. The dock company constructed a stairway and grated ramp to allow seamen and longshoremen to walk over the conveyor belt. This "crossover ramp" was located on the dock company's property near the water's edge, and one flight of stairs was approximately twenty-five feet from the ship's ladder.

On September 2, 1973, plaintiff worked his customary eight-hour shift (8:00 A.M. to 4:00 P.M.). Plaintiff went into the town to have a few drinks around 6:30 P.M. Before leaving, his supervisor asked him to purchase a carton of cigarettes in town.

Plaintiff started to walk back to the ship at approximately 11:30 P.M. He met two fellow crewmembers (Adamzak and Johnson), who testified that his gait was slow and staggering. Plaintiff told these men to leave him alone, indicating that he could make it to the ship without their assistance. Plaintiff testified at his second trial[2] that he slipped on the dock near the stairway to the crossover ramp due to the darkness and spillage of taconite pellets. Adamzak testified that the area was "all gravel" and "kind of dim," but he had no difficulty walking in the area. Johnson stated that he encountered no difficulty walking in the area and did not know of any debris in the area at the time of the accident.

The examining physician testified that the plaintiff received a mild concussion and a very large cut

---

[2] Plaintiff's first trial resulted in a verdict of $180,000, with a finding of ninety-five percent comparative negligence, for a judgment of $9,000. The Court of Appeals reversed and remanded for a new trial on the sole basis that the trial judge improperly engaged in an off-the-record discussion with a juror. 96 Mich App 64; 292 NW2d 486 (1980).

on the head which required several stitches to close. Plaintiff was held for five days for observation and released. Plaintiff testified that he continued to have headaches and dizziness after the accident and that he could no longer work on ships.

Plaintiff's second trial resulted in a verdict of $380,000, and a finding of thirty-five percent comparative negligence, for a judgment of $247,000. The Court of Appeals affirmed in an unpublished decision. We granted leave to appeal. 422 Mich 936 (1985).

## BACKGROUND

In order to analyze the questions presented, it is helpful to understand some basic principles of admiralty law. In general, a seaman has three basic theories of recovery: unseaworthiness of a vessel, maintenance and cure, and an action for damages under the Jones Act, 46 USC 688.

A seaman who becomes ill or injured while "in the service of the ship"[3] is entitled to "maintenance and cure" ("cure" from the Latin noun *cura*, care, healing). Recovery is in the form of a per diem living allowance and payment of medical costs. Recovery is not based on fault and is analogous to workers' compensation. Plaintiff did not make a claim for maintenance and cure in this case.

A seaman may also sue on the basis of the vessel's "unseaworthiness,"[4] since a shipowner has an absolute, nondelegable duty to furnish a vessel that is reasonably safe for its intended purposes.

[3] See *Aguilar v Standard Oil Co,* 318 US 724, 730-731, n 6; 63 S Ct 930; 87 L Ed 1107 (1943).

[4] See *Shemman v American Steamship Co,* 89 Mich App 656, 665; 280 NW2d 852 (1979); *Hubbard v Faros Fisheries, Inc,* 626 F2d 196 (CA 1, 1980).

Plaintiff's claim under this theory was rejected prior to both trials, and the unseaworthiness of the vessel is not at issue here.

We stress that plaintiff's sole basis for recovery in this case is grounded upon the Jones Act. It is important to recognize that the three theories are separate, and each has its own body of interpretative case law.

The Jones Act states that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury . . . ." The parties agree that there are two basic elements in a Jones Act claim. First, the injury must have occurred "in the course of . . . employment." Second, the injury must have been caused in some way by the defendant's negligence. In interpreting claims under the Jones Act, several courts have looked at analogous cases under the Federal Employers' Liability Act, 45 USC 51-60, since the Jones Act was meant to provide statutory rights and remedies comparable to those granted to railroad workers under the FELA.

## ANALYSIS

Defendant argues that the lower courts erred in failing to direct a verdict in its favor for two reasons. First, plaintiff was not "in the course of his employment" for purposes of the Jones Act. Second, even if he was, the defendant was not negligent since it owed no duty to the plaintiff under the facts of this case. We will analyze these arguments separately, keeping in mind the appro-

priate standard of review for a denial of a motion for a directed verdict.[5]

## I. WAS THE PLAINTIFF "IN THE COURSE OF HIS EMPLOYMENT" AT THE TIME OF THE INJURY?

The plaintiff's argument was accepted by the Court of Appeals which concluded:

> The term "course of employment" as used in the statute "is the equivalent of the 'service of the ship' formula used in maintenance and cure cases." *Braen v Pfeifer Oil Transportation Co,* 361 US 129; 80 S Ct 247; 4 L Ed 2d 191 (1959). The United States Supreme Court has long held that a seaman on shore leave is in the service of the ship. *Warren v United States,* 340 US 523; 71 S Ct 432; 95 L Ed 503, 509 (1951). A seaman on shore leave is, therefore, in the course of his employment. *Central Gulf Steamship Corp v Sambula,* 405 F2d 291, 298-299 (CA 5, 1968); *Marceau v Great Lakes Transit Corp,* 146 F2d 416, 418-419 (CA 2, 1945).

Defendant concedes that a seaman on shore leave is "in the service of the ship" for purposes of recovering *maintenance and cure.* However, defendant argues that the Court of Appeals erred in concluding that a seaman on shore leave is "in the course of his employment" for the purposes of the

[5] A motion for directed verdict may only be granted when no factual question exists upon which reasonable minds can differ. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975). In reviewing a trial court's denial of a motion for directed verdict, this Court views the evidence in the light most favorable to the nonmoving party to determine whether a prima facie case has been established. *Id.* See also *May v Parke, Davis & Co,* 142 Mich App 404, 411; 370 NW2d 371 (1985). [*Latimer v William Mueller & Son, Inc,* 149 Mich App 620, 629-630; 386 NW2d 618 (1986). See also *Shemman,* n 4 *supra,* p 664.]

Jones Act. Our review of the cases cited by both parties convinces us that the Court of Appeals clearly erred, and that defendant was entitled to a directed verdict.

In *Braen, supra,* pp 132-133, petitioner was *ordered* to replace worn decking on a repair raft. He was injured when a catwalk gave way, and he brought suit under the Jones Act. In reviewing whether the injury occurred in the course of petitioner's employment, the United States Supreme Court stated:

> The fact that the injury did not occur on the vessel is not controlling, as *Senko v LaCrosse Dredging Corp,* [352 US 370, 373; 77 S Ct 415; 1 L Ed 2d 404 (1957)], holds. *A "seaman" may often be sent off ship to perform duties of his employment. O'Donnell v Great Lakes [Dredge & Dock] Co,* [318 US 36; 63 S Ct 488; 87 L Ed 596 (1943)]. In *Marceau v Great Lakes Transit Corp,* (CA 2 NY [1945]) 146 F2d 416, a ship's cook was allowed to recover under the Jones Act when; *pursuant to duty,* he was returning to the ship and was injured on the dock while approaching a ladder used as ingress to the vessel.
>
> *We held that a seaman who was injured on the dock while departing from the ship on shore leave was in the service of the vessel and was entitled to recover for maintenance and cure in Aguilar v Standard Oil Co,* 318 US 724 [63 S Ct 930; 87 L Ed 1107 (1943)]. It was there recognized that a seaman is as much in the service of his ship when boarding it on first reporting for duty, quitting it on being discharged, or going to and from the ship while on shore leave, as he is while on board at high sea. *Id.,* at 736-737. We also held that a seaman injured in a dance hall while on shore leave was in the service of his ship in *Warren v United States,* 340 US 523, 529. These two cases were not brought under the Jones Act but involved maintenance and cure. Yet they make clear

that the scope of a seaman's employment or the
activities which are related to the furtherance of
the vessel are not measured by the standards
applied to land-based employment relationships.
*They also supply relevant guides to the meaning of
the term "course of employment" under the Act
since it is the equivalent of the "service of the
ship" formula used in maintenance and cure cases.*
See Gilmore and Black, The Law of Admiralty, p
284. And see *O'Donnell v Great Lakes [Dredge &
Dock] Co, supra* at 43; *Marceau v Great Lakes
Transit Corp, supra.*

Petitioner in the present case was ordered by a
superior to perform some carpentry work on a raft
which lay between the lighter and the dock. Peti-
tioner was injured, as we have said, while on the
catwalk attempting to move the raft into position
for boarding. The raft was used to facilitate chip-
ping, painting and welding on respondent's vessels.
Cf. *Grant Smith-Porter Ship Co v Rohde,* 257 US
469 [42 S Ct 157; 66 L Ed 321 (1922)]. New decking
was to be installed on the raft. The fact that the
raft was not presently being used to repair respon-
dent's barge is in our view immaterial. *Petitioner
was acting "in the course of his employment" at
the time of the injury, for at that moment he was
doing the work of his employer pursuant to his
employer's orders.* No more is required by the
Jones Act, as the *O'Donnell* case indicates, *peti-
tioner being a seaman who was injured as a conse-
quence of the negligence of his employer.* [Empha-
sis supplied.]

We agree with the defendant that the Court of
Appeals placed improper emphasis on portions of
*Braen,* while ignoring its holding. *Aguilar* and
*Warren* are relevant guides in determining the
meaning of "in the course of his employment," but
those cases involved claims for maintenance and
cure.

As interpreted by *Braen,* the seaman must be
"doing the work of his employer pursuant to his

employer's orders" at the time of the injury. No more is required under the act (*Braen, supra*), but we are asked whether the act can be satisfied with less. Cf. *Vincent v Harvey Well Service,* 441 F2d 146, 148 (CA 5, 1971).[6] In answering this question, we note that recovery under the Jones Act does not depend on the location of an injury, but instead "on the nature of the service and its relationship to the operation of the vessel plying in navigable waters." *O'Donnell, supra,* pp 42-43. We cannot ignore the phrase "in the course of his employment," because it was intended to mean what it says. *Id.*

Under these facts, we find that the Court of Appeals erred by taking an analytical step which implies that a seaman on shore leave is always in the course of his employment.

The Court of Appeals cited *Marceau, supra,* and *Sambula, supra,* in support of its analytical step. In *Marceau,* the plaintiff was ashore on personal business, but was ordered to return at a designated time to provide the night lunch. He slipped on the dock near the ship's ladder, and sued for damages under the Jones Act. The *Marceau* court stated:

> The defendant's other two contentions are likewise without merit. The *plaintiff was acting under*

[6] In *Vincent,* a seaman employed on an amphibious drilling rig was injured while riding to work as a passenger in an automobile furnished by his employer. The court noted that a seaman is plainly in the course of his employment when he is doing the work of his employer pursuant to his employer's orders. This instant case, like *Vincent,* involves the more complicated situation involving activity done off the ship and not strictly "pursuant to duty." In affording coverage, the *Vincent* court noted several factors which demonstrated that the employer had substantial interests in providing transportation to the crew. These included the location and nature of the submersible rig, its lack of sleeping and eating quarters, and the remote proximity of the rig to land. None of these factors are present in the instant case.

*orders when he returned to the ship.* Consequently
at the time of the accident he was not only acting
in the course of his employment *but suffered his
injuries while on property in the possession and
under the control of the defendant as lessee and
over which the plaintiff had to pass in order to
return to his work.* Under the decisions a man is
acting in the course° of his employment when
coming to or returning from work, and upon the
employer's premises or upon adjacent property if
approaching by a customary route. *Wong Bar v
Suburban Petroleum Transport,* 2 Cir, 119 F2d 745
[1941]. [Emphasis supplied. *Id.,* p 418.]

Even though the *Marceau* court did not have the
benefit of the *Braen* analysis at the time it ren-
dered a decision, *Marceau* still emphasized that
"the plaintiff was acting under orders when he
returned to the ship." Szopko notes that *Braen*
cited *Marceau.* However, *Braen* also noted that the
petitioner in *Marceau* was acting "pursuant to
duty." Thus, the relevant focus in *Marceau* was on
whether the plaintiff was performing his duty in
the course of his employment at the time of the
injury.[7]

The Court of Appeals also cited *Sambula.* In
that case, the plaintiff was assaulted while on
shore leave and received a cut beside his eye. The
plaintiff was taken to a public hospital and later
allowed to join his vessel for the remainder of the
voyage. Complications resulted in the loss of the
plaintiff's eye. The plaintiff argued that he should
have been treated by a specialist and that the
shipowner was negligent in the administration of
medical care.

---

[7] We also note that *Marceau* is distinguishable because the injury
occurred while on property under the control of the shipowner. See
section II.

The *Sambula* court stated:

> In *Nowery v Smith,* ED Pa 1946, 69 F Supp 755, aff'd 3 Cir 1947; 161 F2d 732, it was held that a seaman was "in the course of his employment," as that phrase is used in the Jones Act, while enjoying his shore leave in a foreign port. [405 F2d 298.]

However, the court also noted:

> The preceding language from *Nowery v Smith* does not mean that a seaman may recover under the Jones Act for all injuries sustained while he is on shore leave; it means only that recovery cannot be denied solely on the ground that a seaman, while on shore leave, is not "in the course of his employment." Annot, 4 L Ed 2d 1777, 1782 at fn 5. [*Id.,* p 298, n 4.]

Accordingly, the Court of Appeals erred in citing *Marceau* and *Sambula* for the proposition that a seaman on shore leave is always in the course of his employment.

We hold that, for purposes of a Jones Act claim, a seaman is in the course of his employment if he is doing the work of his employer pursuant to his employer's orders, *Braen, supra,* or when the nature of the service rendered and its relation to the operation of the vessel, *O'Donnell, supra,* is of such a nature that a seaman may be deemed in the course of his employment. We decline to adopt a more precise rule since this determination should be made case by case.

However, given the facts of the present case, we find that plaintiff was not in the course of his employment at the time of the injury. By his own admission, he was off duty and on his own time. He did not have to return to work until 8:00 A.M.

the next morning. He was returning from several hours of drinking, clearly a personal excursion.[8]

Plaintiff finally argues that he was in the course of his employment because he was returning with a carton of cigarettes he purchased at the request of his supervisor. The Court of Appeals analysis did not require a discussion of this theory. However, even taken in the light most favorable to the plaintiff, the proofs indicate that this action was strictly a personal favor as opposed to an order from a supervisor. According to Szopko's own testimony, he was off duty until his regular shift started the next morning and was not working at the time of the injury.[9]

For all of these reasons, we hold that the lower courts erred in failing to direct a verdict in defendant's favor, because plaintiff was not "in the

[8] See *Petition of Atlass,* 350 F2d 592, 597 (CA 7, 1965):

Assuming that Muth and Darr were in the course of their employment while departing from the yacht for the purpose of obtaining their meals and returning thereto in the normal manner, it certainly is a far-fetched idea that they continued in such course when they took to themselves the liberty of spending three near-midnight hours in a tavern consuming intoxicating liquors. Neither do we think that such relationship was restored when they attempted to return to the yacht, one in a drunken stupor and the other badly intoxicated.

[9] Plaintiff also testified on redirect examination as follows:

*Q.* Now when you went ashore, on that September 1, 1973, in the twilight of the evening, you had to perform a service for your engineer in getting him some cigarettes, right?
*A.* Yes sir.
*Q.* And he told you that, right?
*A.* Yes sir. He asked me, he didn't tell me.
*Q.* He is your boss?
*A.* Yes sir, he is my engineer.

Although the trial court found that this was a personal favor rather than a duty, both lower courts ignored this finding in their subsequent rulings.

course of his employment" at the time of his injury.

## II

Although the location of the injury does not control for purposes of determining whether a seaman is in the course of his employment, *O'Donnell, supra,* it may have a bearing on whether defendant was negligent. Since a Jones Act claim is grounded on the defendant's negligence, the defendant must owe some duty of reasonable care to the plaintiff under the circumstances. Accordingly, even *if* we were to assume that the plaintiff was acting in the course of his employment, his claim would fail for another reason. We find that the trial court erred in failing to direct a verdict in defendant's favor, since the defendant did not owe the plaintiff a duty of care under the facts of this case.

The Court of Appeals addressed and rejected defendant's second claim of error as follows:

Defendant claims that it had no duty to concern itself with the conditions on the dock adjacent to its ship, over which it had no dominion or control, and therefore it cannot be held negligent for injuries arising from those conditions. *Bates v Prudential-Grace Lines, Inc,* 497 F2d 900 (CA 9, 1974) (adopting the lower court decision reported at 375 F Supp 774 [WD Wash, 1972]); *Paul v United States,* 205 F2d 38 (CA 3, 1953); *Todahl v Sudden & Christenson,* 5 F2d 462 (CA 9, 1925). Defendant is mistaken, however, in asserting that *Hamilton v Marine Carriers Corp,* 332 F Supp 223 (ED Pa, 1971) is the only decision to the contrary. In *Magnolia Towing Co v Pace,* 378 F2d 12 (CA 5, 1967), the Court held that a tugboat operator injured in an automobile driven by the ship owner's employee en route to the work site could

recover under the Jones Act. The seaman in *Marceau, supra,* was injured when he slipped and fell on the dock within a few feet of the ship's ladder. "The plaintiff accordingly made out a prima facie case by furnishing evidence of a slippery and ill-lighted place on the dock which he had to traverse in order to ascend the ladder upon returning to work." 146 F2d 419.

Review of the decisions cited by defendant suggest[s] that they make little sense in light of the Supreme Court precedents. If a seaman on shore is in the course of his employment for purposes of Jones Act coverage, it seems contradictory to limit the ship owner's liability for its negligence at the end of the gangplank. Such a strict delineation of the employer's duty renders irrelevant the fact that a seaman is in the course of his employment even though off the ship.

Moreover, a finding that defendant's duty extends beyond the ship itself does not make it "liable for the dock owner's negligence." *Paul, supra,* p 43. Under the Jones Act, an employer has a duty to provide seamen with a safe place to work, including a safe, adequately lighted means of ingress and egress to and from the vessel. [Petition of] *Atlass,* [350 F2d 592, 599 (CA 7, 1965)]; *Marceau, supra,* p 419. An employer may also be held liable "for permitting a dangerous condition emanating from the vessel to arise at the place where [the employee] was injured even though it lacked control or right of control over that place." *Hagans v Ellerman & Bucknall Steamship Co,* 318 F2d 563, 579 (CA 3, 1963).

A

We first note that the Court of Appeals decision on this issue was based on its faulty initial premise, i.e., that "a seaman on shore is in the course of his employment for purposes of Jones Act coverage." In other words, since a seaman on shore is not necessarily in the course of his employment, it

is *not* contradictory to limit a shipowner's liability for negligence at the gangway under the appropriate circumstances.

Contrary to the Court of Appeals analysis, we find that the rule summarized in *Bates* precludes recovery under these facts. In *Bates,* plaintiff left his ship on a personal errand, and stepped into a hole located some 400 to 600 feet from the ship. The pier was owned, operated, and controlled by the Chilean government. *Bates* first cited *Todahl* as follows:

> [T]he substantive duty of a vessel owner to provide a seaman with a safe place to work did not "extend to his protection when going beyond the premises of his employment for purposes of his own and over premises of which his employers had no dominion or control." [375 F Supp 775.]

The *Bates* court continued:

> The Second Circuit also has followed the general rule of *Todahl*. In *Wheeler v West India S S Co,* 205 F2d 354 (2d Cir 1953), the Court of Appeals in a per curiam opinion adopted the opinion of the District Court for the Southern District of New York which noted:
>
> "Though the defendant was duty-bound to provide reasonably safe means of immediate access to the vessel (citing authority), shipowners have generally been held not liable for unsafe conditions in places *beyond the gangway not under their control when the seaman is there for his own purposes and not in the performance of his duties."*
>
> * * *
>
> District courts in the Fourth and Fifth Circuits have cited *Todahl* and denied recovery for seamen under even more compelling circumstances than are present in the case now before this Court. In both *Lemon v United States,* 68 F Supp 793 (D Md

1946), and *Miles v States Marine Lines, Inc,* 325 F Supp 1370 (ED Tex 1971), seamen were killed while attempting to return by small boat to their ships which were anchored off shore. The courts found that the shipowners had no duty to provide a means of transportation between ship and shore for seamen granted shore leave. It followed that the shipowners were not liable for any negligent injury to seamen who arranged their own transportation.[6]

---

[6] The Supreme Court also gave some support to the holding in *Todahl* in *Aguilar v Standard Oil Co of New Jersey,* 318 US 724, 736, 737; 63 S Ct 930, 937; 87 L Ed 1107 (1943), when it stated:

"Consequently the fact that the shipowner might not be liable to the seamen in damages for the dockowner's negligence, cf. *Todahl v Sudden & Christenson,* 9 Cir, 5 F2d 462 (CCA), does not relieve him of his duty of maintenance and cure."

---

[375 F Supp 776.]

As in *Bates,* the evidence in this case established that Szopko was injured on a dock owned and operated by the dock company. The conveyor belt system was constructed and operated by the dock company, which had exclusive control over and responsibility for the unloading operation. The crewmen who preceded Szopko to the ship without injury testified that, although the dock area was dim, they did not have any trouble seeing where they were going.

Assuming control over the dock area is required, plaintiff points to the following evidence which indicates that the defendant had "de facto control" over these dockside conditions. First, defendant's cargo littered the crossover ramp area. Second, defendant had the ability to illuminate the area. Third, defendant had a watchman on board who should have assisted the plaintiff.

However, even viewing these facts in the light

most favorable to the plaintiff, we cannot conclude that they support the conclusion that the defendant exercised any real control over the dock area. Instead, the evidence clearly showed that the dock company was solely responsible for the area where the injury occurred. Plaintiff's answers to defendant's interrogatories indicated that plaintiff believed that the dock company owned the conveyor system and crossover ramp. Several dock company employees testified about "their" equipment. Finally, in denying the motion for directed verdict, the trial court noted that the shipowner exercised no control over the dock. Since any evidence of control was lacking and for the other reasons set forth below, we believe that the defendant was entitled to a directed verdict.

B

Second, the cases cited by the Court of Appeals have either been discredited or are distinguishable.

For example, in *Hamilton, supra,* plaintiff was injured on the dock owner's property while returning from a personal errand. *Hamilton* relied on a series of cases, including *Law v Victory Carriers, Inc,* 432 F2d 376 (CA 5, 1970), which held that longshoremen could recover from a shipowner under the doctrine of unseaworthiness even though the injury occurred off the vessel. *Law* was later reversed by the United States Supreme Court. *Victory Carriers, Inc v Law,* 404 US 202; 92 S Ct 418; 30 L Ed 2d 383 (1971).

Furthermore, *Hamilton* relied on a series of cases involving FELA claims. While we have already acknowledged that FELA cases are generally analogous, we decline to adopt *Hamilton's* reasoning in the face of clearly applicable cases inter-

preting the Jones Act.[10] Accord *Bates, supra,* 497 F2d 900, n 1.

We also reject the Court of Appeals reliance on *Magnolia Towing Co v Pace, supra.* The only issue decided in that case involved whether plaintiff was a "seaman" at the time of the injury. *Id.,* p 13. *Magnolia* does not contain a meaningful discussion of either the "in the course of his employment" test, or the nature of the duty owed to a seaman injured on shore.

The Court of Appeals also improperly relied on *Hagans v Ellerman & Bucknall Steamship Co, supra,* for the proposition that an employer may be liable for a dangerous condition emanating

---

[10] 1B Benedict, Admiralty (7th ed), ch 3, § 29, n 21, pp 3-206 to 3-208 states:

> The recent district court decision in *Hamilton v Marine Carriers Corp,* 332 F Supp 223; 1971 AMC 2454 (ED Pa 1971), raises many troublesome questions concerning shipowner responsibility for pier conditions.
>
> * * *
>
> Although *Hamilton* raises interesting agency and scope of duty questions, and general adoption of its rationale would greatly facilitate recovery for seamen injured ashore, it is doubtful that its expansive reading of the law will be accepted. In the one case which has considered *Hamilton* as precedent, *Bates v Prudential-Grace Lines, Inc, supra,* the Ninth Circuit flatly stated, "we expressly disapprove and reject the *Hamilton* reasoning." The effect of *Hamilton* would be to reject *Paul v United States, supra,* and the many decisions which have since adopted its position. The lower court in *Bates* was doubtful that "either *Carter* [*v Union R Co,* 438 F2d 208 (CA 3, 1971)] or *Shenker* [*v Baltimore & Ohio R Co,* 374 US 1; 83 S Ct 1667; 10 L Ed 2d 709 (1963)] was intended to abrogate [the] well established rule" that the shipowner's liability normally terminated at the gangplank. *Hamilton* is not incorrect in noting that jurisprudential advances under the FELA inure to the benefit of seamen under the Jones Act, see § 2 *supra;* however, the courts must still take account of the differences between these land and sea employments, and cannot always automatically apply FELA law to seafaring operations when to do so would be incompatible with principles developed under the general maritime law. In the case at hand, the court neglected to fully consider the distinction.

from the vessel even though the employer lacks control of the premises. There, plaintiff Hagans was a *longshoreman* injured during unloading operations. Plaintiff had no right of recovery under the Jones Act, and the case is distinguishable on that basis alone. Furthermore, a close reading of *Hagans* indicates that the court accepted the defendant's argument that it owed no duty to furnish the plaintiff with a safe place to work, since it had no control over the place of the injury. *Hagans, supra,* pp 577-579, 588.

C

Plaintiff directs us to cases holding that a seaman is in the course of his employment when coming to or returning from work and upon the employer's premises or upon adjacent property if approaching by a customary route. See *McDonough v Buckeye S S Co,* 103 F Supp 473 (ND Ohio, 1951), aff'd 200 F2d 558 (CA 6, 1952), citing *Marceau, supra.*

We find *McDonough* inapposite on its facts. There, a fellow crew member (Cox) voluntarily undertook to assist the plaintiff aboard after the plaintiff was denied entry to the dock area due to his intoxicated condition. When the plaintiff staggered and fell a second time, Cox left the plaintiff in a position dangerously close to the water. Cox went aboard to summon help, but plaintiff fell into the water to his death before help returned.

The plaintiff's cause of action in *McDonough* was predicated upon the negligence of his fellow crewman. Thus, the case did not focus on the ownership or control of the dock. The court noted that once Cox voluntarily took charge of a helpless person, he had a duty to exercise reasonable care

for that person's safety. In the present case, however, defendant's agents never assumed responsibility for plaintiff's safe passage to the vessel.

D

Both lower courts erred in relying on distinguishable or discredited cases which indicate that a shipowner's duty extends to areas over which it has no control. On the contrary, we embrace the rule announced in *Bates,* and hold that a defendant's duty to provide a seaman with a safe place to work does not extend beyond the immediate vicinity of the gangway when the seaman is not in the performance of his duties. *Bates, supra; Todahl, supra.* Accordingly, defendant was entitled to a directed verdict under the facts of this case.

III

The defendant also argues that the trial court erred in 1) instructing the jury on the issue of liability and damages and, 2) concluding that the plaintiff's treating physician was "unavailable" to testify as a live witness at plaintiff's second trial. See GCR 1963, 302.7; MRE 2.302(B)(4)(d). Our disposition of this appeal makes it unnecessary to address these claims.

Reversed.

WILLIAMS, C.J., and BRICKLEY, BOYLE, and RILEY, JJ., concurred with CAVANAGH, J.

LEVIN, J. (*concurring*). Frank J. Szopko was a crew member on a Kinsman Marine Transit Company ship. He was injured when he slipped and fell on the dock while returning to the ship from a personal shore leave. He commenced this action

under the Jones Act.[1] As set forth in the opinion of
the Court, Szopko can recover for his injuries
under the Jones Act only if he can establish both
that he was acting "in the course of his employ-
ment" when injured, and that his injury was
caused by the negligence of Kinsman. The major-
ity holds that Szopko was unable to establish
either element, and denies his claim.

I concur in the decision of the majority, but
disagree on the "course of employment" issue.

A number of courts have held that a seaman on
shore leave, at least when he is leaving from or
returning to his ship by a standard route from a
personal shore leave, is within the course of his
employment under the Jones Act.[2] The United

---

[1] Any seaman who shall suffer personal injury in the course of
his employment may, at his election, maintain an action for
damages at law, with the right of trial by jury, and in such
action all statutes of the United States modifying or extending
the common-law right or remedy in cases of personal injury to
railroad employees shall apply . . . . [46 USC 688.]

[2] See *Nowery v Smith,* 69 F Supp 755 (ED Pa, 1946), aff'd 161 F2d
732 (CA 3, 1947); *Walton v Continental S S Co,* 66 F Supp 836, 841 (D
Md, 1946); *Williamson v Western-Pacific Dredging Corp,* 304 F Supp
509 (D Or, 1969), aff'd 441 F2d 65 (CA 9, 1971), cert den 404 US 851
(1971); *Dixon v Grace Lines, Inc,* 27 Cal App 3d 278, 286, n 5; 103 Cal
Rptr 595 (1972).

Numerous other cases have so stated in dicta. See, e.g., *Wheeler v
West India S S Co,* 103 F Supp 631 (SD NY, 1951), aff'd 205 F2d 354
(CA 2, 1953), cert den 346 US 889 (1953); *Broussard v Marine
Transport Lines, Inc,* 369 F Supp 103 (ED Tex, 1974); *Dangovich v
Isthmian Lines, Inc,* 218 F Supp 235 (SD NY, 1963), aff'd 327 F2d 355
(CA 2, 1964); *Ugarte v United States Lines, Inc,* 64 NY2d 836; 486
NYS2d 934; 476 NE2d 333 (1985); *Allan v Brown & Root, Inc,* 491 F
Supp 398 (SD Tex, 1980); *Marceau v Great Lakes Transit Corp,* 146
F2d 416 (CA 2, 1945). See also Anno: *Jones Act—Course of Employ-
ment,* 4 L Ed 2d 1777.

Kinsman relies on *Petition of Atlass,* 350 F2d 592, 597 (CA 7, 1965),
where the United States Court of Appeals for the Seventh Circuit
denied the claim of two seaman who drowned while returning to the
ship from a personal shore leave because they were not in the course
of their employment when the accident occurred. In so holding,
however, the court stressed that the two seamen were extremely

States Supreme Court has said as much in dicta. See *Braen v Pfeifer Oil Transportation Co,* 361 US 129, 131-132; 80 S Ct 247; 4 L Ed 2d 191 (1959), where the Court said that the meaning of the term "in the course of his employment" under the Jones Act was equivalent to the meaning of the term "in service of the ship" in a maintenance and cure action.[3] The Court had previously held that a

drunk when they fell into the water and said that they were responsible for their own deaths. The court also implied that the plaintiffs would have been in the course of their employment while returning from shore leave in ordinary circumstances, and that it was the excessive drinking that constituted a departure from their employment. Even if *Atlass* is not distinguishable, it is an anomaly among the numerous decisions supporting the rule that a seaman on shore leave, at least when he is leaving the ship or returning to it, is within the course of his employment under the Jones Act.

The majority would distinguish *Central Gulf Steamship Corp v Sambula,* 405 F2d 291 (CA 5, 1968), where the United States Court of Appeals for the Fifth Circuit held that a seaman who was assaulted while on shore leave was within the course of his employment. In so holding, the court cited at length from *Nowery v Smith, supra,* for the view that a seaman on shore leave is in the course of his employment.

In attempting to discredit the authority of *Sambula,* the majority relies on a footnote in *Sambula* that might appear to contradict the rule stated in *Nowery:*

> The preceding language from *Nowery v Smith* does not mean that a seaman may recover under the Jones Act for all injuries sustained while he is on shore leave; it means only that recovery cannot be denied solely on the ground that a seaman, while on shore leave, is not "in the course of his employment." [*Sambula, supra,* p 298, n 4.]

The footnote notes that merely being in the course of one's employment is not sufficient under the Jones Act for the plaintiff to recover. The plaintiff's injury must have been caused by the defendant's negligence. Read this way, what otherwise might be seen as an incongruous footnote becomes understandable. The footnote reminds the reader that under the Jones Act—in contrast with a maintenance and cure action—the plaintiff must establish both that he was in the course of his employment and that the shipowner was negligent.

[3] While the holding in *Braen* goes no further than to state that since the plaintiff was doing the work of his employer when injured he was clearly in the course of his employment, the Court certainly did not suggest, as the majority implies, that a seaman is *not* in the course of his employment if he is not performing the work of his employer. The actual holding does not address the status of a seaman who is off duty or on shore leave.

seaman returning to his ship from a personal
shore leave is in the service of his ship for pur-
poses of maintenance and cure.[4]

There are also a number of decisions that con-
tradict the majority's construction of the "course
of employment" requirement, although they stop
short of affirming the view here stated. Those
decisions declare that a seaman may be within the
course of his employment under the Jones Act
although he is not, at the time he is injured,
carrying out his employer's orders, or otherwise
performing a job function.[5]

*O'Donnell v Great Lakes Dredge & Dock Co,* 318
US 36; 63 S Ct 488; 87 L Ed 596 (1943), cited in the
opinion of the Court, does not hold that a seaman
is within the course of his employment under the
Jones Act only when he is following orders or
performing a job function. The Court held rather
that a seaman can be within the course of his
employment although he is injured on land rather
than navigable waters. The plaintiff in *O'Donnell*
was injured when a weight fell on him while he
was working on shore. The United States Court of
Appeals for the Seventh Circuit had denied recov-
ery under the Jones Act because the injury did not
occur on navigable waters. The United States Su-
preme Court held that the words "in the course of
his employment" are not restricted to injuries that
occur at sea. It did not hold that a seaman return-
ing from shore leave was not in the course of his
employment.

---

[4] *Aguilar v Standard Oil Co,* 318 US 724; 63 S Ct 930; 84 L Ed 1107
(1943). *Warren v United States,* 340 US 523; 71 S Ct 432; 95 L Ed 503
(1951).

[5] See, e.g., *Holm v Cities Service Transportation Co,* 60 F2d 721, 722
(CA 2, 1932); *Sundberg v Washington Fish & Oyster Co,* 138 F2d 801
(CA 9, 1943); *McCall v Inter-Harbor Navigation Co,* 154 Or 252; 59
P2d 697 (1936).

ARCHER, J. I respectfully dissent. The Court of Appeals decision in this case should be affirmed.

In *Braen v Pfeifer Oil Transportation Co,* 361 US 129; 80 S Ct 247; 4 L Ed 2d 191 (1959), the United States Supreme Court held that "course of employment" under the Jones Act is the equivalent of "in the service of the ship" formula used in maintenance and cure cases. The majority states that the Court of Appeals placed improper emphasis on portions of *Braen,* while ignoring its holding. I disagree.

By holding that course of employment under the Jones Act was the equivalent of the "in the service of the ship" formula, the *Braen* Court left the door open for fact situations like the one presented here. By reason of the unique nature of his employment, a seaman is considered to be on the shipowner's business while he is enjoying shore leave because such leave, with its attendant relaxation, is a necessary and beneficial remedy for the confinement and discipline to which the seaman is subjected while aboard ship. There is no valid reason why, for purposes of determining the shipowner's liability under the Jones Act, a seaman on leave who slips and falls on the dock while returning to the ship should not be considered to be "in the course of his employment."

Defendant contends that a shipowner has no duty to provide a safe means of ingress and egress beyond the gangplank to a seaman who is off duty and ashore on his own personal time. I agree with the Court of Appeals treatment of this contention. "If a seaman on shore is in the course of his employment for purposes of Jones Act coverage, it seems contradictory to limit the ship owner's liability for its negligence at the end of the gangplank. Such a strict delineation of the employer's duty renders irrelevant the fact that a seaman is in the course of his employment even though off the ship."