Daniel COLON, Jr., Plaintiff,

v.

APEX MARINE CORPORATION c/o Westchester Shipping Company, Inc., and Westchester Marine, Inc., and Westchester Marine Shipping Co., Inc. and Vertigo, Inc. d/b/a Tillies King, Defendants.

Civ. A. No. 90–0632L.

United States District Court, D. Rhode Island.

Sept. 20, 1993.

B. Mitchell Simpson, III, Palumbo, Glavin & Boyle, Midletown, RI, Carroll E. Ayers, Wakefield, MA, for plaintiff.

Gordon Arnott, Gregory W. O'Neill, Hill, Betts & Nash, New York City, Thomas C. Plunkett, Kiernan, Plunkett & Redihan, Providence, RI, for Apex and Westchester, defendants.

David J. Oliveira, MacAdams & Wieck, Inc., Providence, RI, for defendant Vertigo.

### MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is now before the Court on a motion filed by defendants Apex Marine Corporation c/o Westchester Shipping Company, Inc., Westchester Marine, Inc., and Westchester Marine Shipping Co., Inc. (the "Apex" defendants) for summary judgment on Count I of the complaint which alleges a claim under the Jones Act. For the reasons stated below, the motion is granted.

#### I. *Background*

This suit arises from a knifing incident on December 23, 1987, involving crew members of the S/T Charleston on authorized shore leave in Providence, Rhode Island. Plaintiff Daniel Colon was an engineer aboard the vessel, while Victor DeJesus and Michael McCarthy were able-bodied seamen. Those three members of the crew left the S/T Charleston separately during the afternoon or evening of December 23, 1987. While they had not planned to meet ashore, after finding themselves in the same bar by happenstance they chose to share a taxi in their travels to other bars. Between 9:30 and 10:00 p.m. the sailors were in a bar known as Tillies King Cocktail Lounge, playing video games and drinking. At approximately 10:30 p.m. an altercation broke out between DeJesus and Michael, in which the bartender and plaintiff intervened to restrain the two men. When the combatants were released, DeJesus again attacked McCarthy, who retreated behind plaintiff. The Coast Guard Hearing record outlines the subsequent events: "In an effort to bring the fight to a halt and to calm [DeJesus], Colon put out his hands in a gesture of peace and told DeJesus to calm down. At that point [DeJesus] pulled out his knife and stabbed Colon in the side. Colon fell to the floor and DeJesus pursued McCarthy about the lounge...." Plaintiff's Exhibit "A" at p. 6. Plaintiff was transported to Rhode Island Hospital to undergo surgery for a laceration to his spleen.

McCarthy had reported prior threats made to him by DeJesus to officers of the S/T Charleston. On about four occasions McCarthy, assigned to work with DeJesus, had criticized DeJesus' laziness and asked him to

do his share of the work. On these occasions DeJesus became verbally abusive, and threatened McCarthy with a knife.

Plaintiff filed this suit in December 1990 seeking to recover damages from the Apex defendants under the Jones Act (Count I), and from Vertigo, Inc., doing business as Tillies King, under the Rhode Island Liquor Liability Act (Count II). Plaintiff claims that because the officers aboard the ship were aware of DeJesus' behavior on prior occasions, the Apex defendants are liable for the injuries plaintiff received at Tillies King Cocktail Lounge. The Apex defendants move for summary judgment, on the grounds that there is no evidence that they were negligent, and that plaintiff was not injured in the course of his employment as required by the Jones Act. The parties engaged in oral argument on March 10, 1993, and the matter was taken under advisement. It is now in order for decision.

## II. *Discussion*

### A. Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a summary judgment motion:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In determining whether summary judgment is appropriate, the court must view the facts on the record and all inferences therefrom in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). Additionally, the moving party bears the burden of showing that no evidence supports the nonmoving party's position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In order for the Apex defendants to prevail on their motion, they must show that no genuine issue of material fact exists to support plaintiff's case. The motion can then be granted if, as a matter of law, defendants are entitled to judgment in their favor.

### B. The Jones Act

The Jones Act provides, in relevant part, that "any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury...." 46 U.S.C. § 688.

Prior to 1920, when Congress passed the Jones Act, an injured seaman was entitled to receive wages and expenses of maintenance and cure, essentially financial support for as long as necessary to effect the highest degree of recovery possible, but could not recover damages for personal injury caused by negligence of the shipowner or captain. *See The Osceola*, 189 U.S. 158, 172–73, 23 S.Ct. 483, 485–86, 47 L.Ed. 760 (1903). The Jones Act granted seamen injured in the course of their employment because of shipowner negligence the right to recover damages. *See* Merchant Marine Act of 1920, ch. 250, § 33, 41 Stat. 988, 1007 (codified at 46 U.S.C. § 688). In this case, plaintiff claims that the Apex defendants may be held liable in negligence for the attack, on shore in a bar, by his fellow crew member DeJesus.

Two issues are raised by the motion for summary judgment: whether the Apex defendants were negligent in retaining DeJesus as a seaman aboard the S/T Charleston after notice of his violent propensities, and whether plaintiff was injured in the "course of employment" as required for recovery under the Jones Act.

### 1. Negligence

The Apex defendants argue that they can not be found negligent because they did not know of any dangerous propensities on the part of DeJesus, and they did not have control over the premises where plaintiff was injured.

Plaintiff counters that because McCarthy had reported the prior incidents with DeJesus, the Apex defendants had, or should have had, knowledge of DeJesus' "violent propensity." Possession of that knowledge made harm caused by DeJesus foreseeable, and triggered a duty to protect the crew. Plaintiff argues that this duty to protect the crew

makes the Apex defendants liable even for an injury in a bar during shore leave.

Under general maritime law recovery for an assault of this type (one crew member on another) is possible under theories of either unseaworthiness or shipowner negligence. *See Benedict on Admiralty,* § 31 *et seq.* The unseaworthiness approach involves a showing that the assailant was a sufficient danger to the crew as to violate the shipowner's absolute duty to maintain a seaworthy vessel. *Id.; Kratzer v. Capital Marine Supply, Inc.,* 490 F.Supp. 222, 229 (M.D.La.1980), *aff'd* 645 F.2d 477 (5th Cir. 1981) (citing *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960)). That theory has not been argued before this Court.

The theory of shipowner negligence, on the other hand, requires plaintiff to establish one of the following: "1) that the assault was committed by the plaintiff's superior for the benefit of the ship's business; 2) that the master or ship's officers failed to prevent the assault when it was foreseeable." *Benedict on Admiralty,* at 3–242. *See Wiradihardja v. Bermuda Star Line, Inc.,* 802 F.Supp. 989, 993 (S.D.N.Y.1992). Plaintiff was not assaulted by a superior, foreclosing that branch of negligence recovery.

Under a foreseeability of harm theory, liability is established by showing that the shipowner breached its duty of providing for the crew's reasonable safety. Such liability can arise when "(1) the assailant is a person of known vicious character, and (2) the shipowner knew or should have known of the crew member's violent propensities." *Wiradihardja,* 802 F.Supp. at 993 (citations omitted). *See also Koehler v. Presque–Isle Transp. Co.,* 141 F.2d 490, 491 (2nd Cir.), *cert. denied,* 322 U.S. 764, 64 S.Ct. 1288, 88 L.Ed. 1591 (1944) (shipowner liable for damages where "the ship's officers knew, or with ordinary diligence, should have known" of the assailant-employee's character).

The Apex defendants argue that there is no showing that they had sufficient knowledge regarding DeJesus to foresee a danger posed to plaintiff or other crew members. A shipowner can not be found liable for an assault injury where there is no evidence the assailant was a habitual violator of ship discipline or had "engaged in any fights or controversies ... or that he had ever threatened anyone with a knife or other weapon prior to [the assault]." *Connolly v. Farrell Lines, Inc.,* 268 F.2d 653, 655 (1st Cir.), *cert. denied,* 361 U.S. 902, 80 S.Ct. 208, 4 L.Ed.2d 158 (1959). In *Connolly,* the Court held that one assault, without prior threats or violence, was insufficient to establish negligence by the employer. Additionally, in *Connolly,* there was insufficient evidence to find that the assailant possessed "a savage disposition" or "a vicious nature." *Id.* at 656.

However, in this case plaintiff has presented evidence that previous incidents of violent behavior by DeJesus were reported to superior officers. Whether those reports gave plaintiff's employer sufficient knowledge to foresee a danger to the crew is a question of fact for the jury. Therefore, the motion for summary judgment cannot be granted on this basis.

2. Course of Employment

To recover under the Jones Act, plaintiff must show that he was injured while in the course of his employment. The Apex defendants argue that plaintiff, while away from the ship for his own purposes, was not in the performance of his duties when injured, and thus he was not in the course of his employment.

Plaintiff argues that the scope of "course of employment" under the Jones Act is an expansive one that encompasses injuries suffered on shore leave. Plaintiff relies on *Daughenbaugh v. Bethlehem Steel Corp., Great Lakes S.S. Div.,* 891 F.2d 1199 (6th Cir.1989), in which plaintiff's decedent was a seaman who was returning to the ship from shore leave when he disappeared. His body was found three weeks later floating in the water near the dock. The Sixth Circuit upheld the District Court's determination that Daughenbaugh was acting in the course of employment when he disappeared. The Court stated, "because Daughenbaugh was required to return to the ship before the

appointed sailing time, he was acting in the course of his employment when, en route to [his ship], he disappeared on the dock." *Id.* at 1206. The Court also noted that Daughenbaugh disappeared while using the route customarily taken by the crew when returning to the ship. *Id.* at 1207.

*Daughenbaugh* is factually distinguishable from the instant case, because Daughenbaugh was returning to the ship, as required by his duties on board ship, at the time of his death. Plaintiff, on the other hand, was pursuing his own agenda for pleasure at a local bar at the time of his injury. Plaintiff, however, argues that the reasoning used by the Sixth Circuit, applying the standard used under maintenance and cure to Jones Act "course of employment," indicates that plaintiff was acting in the course of employment while in a bar on shore leave.

It is well established that a seaman injured while on shore leave is entitled to maintenance and cure from his employer. In *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943), the United States Supreme Court held that an employer's responsibility for maintenance and cure for a seaman injured in the service of the ship "extends beyond injuries sustained because of, or while engaged in, activities required by his employment." *Id.* at 732, 63 S.Ct. at 934. The Court reasoned

> To relieve the shipowner of his obligation in the case of injuries incurred on shore leave would cast upon the seaman hazards encountered only by reason of the voyage. The assumption is hardly sound that the normal uses and purposes of shore leave are "exclusively personal" and have no relation to the vessel's business. Men cannot live for long cooped up aboard ship, without substantial impairment of their efficiency, if not also serious danger to discipline. Relaxation beyond the confines of the ship is necessary if the work is to go on, more so that it may move smoothly. No master would take a crew to sea if he could not grant shore leave, and no crew would be taken if it could never obtain it.... In short, shore leave is an elemental necessity in the sailing of ships, a part

of the business as old as the art, not merely a personal diversion.

*Id.* at 733–34, 63 S.Ct. at 935. The Court held that Aguilar, who was injured while travelling on the only route between the ship and a public street as he left the vessel for shore leave, was entitled to maintenance and cure. Eight years later, the Court relied on *Aguilar* in holding that a seaman injured in a dance hall while on shore leave was entitled to maintenance and cure. *Warren v. United States*, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (1951).

Although both *Aguilar* and *Warren* involved recovery for maintenance and cure, the Court in *Daughenbaugh* relied on those cases in its determination of the scope of recovery under the Jones Act. The Court relied on language used by the Supreme Court in *Braen v. Pfeifer Oil Transp. Co.*, 361 U.S. 129, 132–33, 80 S.Ct. 247, 250, 4 L.Ed.2d 191 (1959), indicating that course of employment under the Jones Act is equivalent to the maintenance and cure requirement that a seaman be in service of the ship.

In *Braen*, the plaintiff was injured on a catwalk between his vessel and a work barge, while preparing to perform some carpentry work on a raft as ordered by his superior. The Supreme Court reversed the Court of Appeals' denial of recovery under the Jones Act, which apparently was based on the theory that the plaintiff was not a seaman at the time he was injured because the work he was doing was not in furtherance of the navigation of the vessel. 361 U.S. at 131, 80 S.Ct. at 249. The Supreme Court held that even though plaintiff was not on board the vessel, he "was acting 'in the course of his employment' at the time of the injury, for at that moment he was doing the work of his employer pursuant to his employer's orders." *Id.* at 133, 80 S.Ct. at 250. In its analysis, the Supreme Court cited both *Aguilar* and *Warren* in support of the proposition that the fact that the injury did not occur on the vessel was not controlling. *Braen* 361 U.S. at 132, 80 S.Ct. at 250. The Court stated:

> These two cases were not brought under the Jones Act but involved maintenance and cure. Yet they make clear that the scope of a seaman's employment or the

activities which are related to the further-ance of the vessel are not measured by the standards applied to land-based employment relationships. They also supply relevant guides to the meaning of the term 'course of employment' under the Act since it is the equivalent of the 'service of the ship' formula used in maintenance and cure cases.

*Id.* at 132–33, 80 S.Ct. at 250.

Although not cited by plaintiff, one case applies the same reasoning as *Daughenbaugh* to sustain Jones Act recovery in circumstances very similar to the case at hand. In *Nowery v. Smith*, 69 F.Supp. 755 (E.D.Pa. 1946), *aff'd*, 161 F.2d 732 (3d Cir.1947) (per curiam), plaintiff Nowery was injured in a fist fight with the chief engineer of his vessel while he was on shore leave in a barroom at Antilla, Cuba. The District Court held that plaintiff was both "on the shipowner's business" for maintenance and cure purposes and "in the course of his employment" under the Jones Act when he was injured.[1] The Court noted that *Aguilar* involved a different factual situation, but stated:

> it seems to me that it was the occasion for the seaman's absence from the vessel—shore leave—which determined that he was on "the shipowner's business" while he was on premises which had to be traversed in going from or returning to the vessel. That being so, I think that logic compels the conclusion that the seaman should also be considered on "the shipowner's business" while he is actually enjoying his shore leave. And if, for the purpose of determining the shipowner's liability for maintenance and cure, the seaman is said to be on "the shipowner's business" while on shore leave, I can see no valid reason why, for the purpose of determining the shipowner's liability under the Jones Act, the seaman should not be said to be "in the course of his employment" at the same time. It is simply a question of defining the seaman's status; and I think that the concepts "on the shipowner's business," and "in the course of employment," as they are applied to the seafaring trade, comprehend identical factual situations.

*Id.* at 757 (footnote omitted).

This Court believes that the *Daughenbaugh* and *Nowery* courts' reliance on the dicta in *Braen* is misplaced. *Braen* actually held that the plaintiff "was acting 'in the course of his employment' at the time of the injury, for at that moment he was doing the work of his employer pursuant to his employer's orders." 361 U.S. at 133, 80 S.Ct. at 250. In contrast, the Supreme Court has defined the requirement for maintenance and cure much more broadly, stating that for maintenance and cure a seaman must "at the time be 'in the service of the ship,' by which is meant that he must be generally answerable to its call to duty rather than actually in performance of routine tasks or specific orders." *Farrell v. United States*, 336 U.S. 511, 516, 69 S.Ct. 707, 709, 93 L.Ed. 850 (1949). The *Farrell* case is instructive because it contrasts the rights of seamen under the two theories:

> In *Aguilar v. Standard Oil Co.*, 318 U.S. 724 [63 S.Ct. 930, 87 L.Ed. 1107], the Court pointed out that logically and historically the duty of maintenance and cure derives from a seaman's dependence on his ship, not from his individual deserts, and arises from his disability, not from anyone's fault. We there refused to look to the personal nature of the seaman's activity at the moment of injury to determine his right to award. Aside from gross misconduct or insubordination, what the seaman is doing and why and how he sustains injury does not affect his right to maintenance and cure, *however decisive it may be as to claims for indemnity or for damages for negligence.*

*Id.* at 515–16, 69 S.Ct. at 709 (emphasis added).

 This Court is not the first to hold that Jones Act course of employment is more limited than the scope of maintenance and cure. In *In re Atlass*, 350 F.2d 592 (7th

---

1. The Court granted the motion for a new trial on the Jones Act claim because, while there was sufficient evidence to go to the jury on the foreseeability theory, there was no legal basis for the alternate theory presented to the jury, that plaintiff could recover if he was acting "as an officer of the ship." 69 F.Supp. at 758.

Cir.1965), *cert. denied,* 382 U.S. 988, 86 S.Ct. 551, 15 L.Ed.2d 476 (1966), the Seventh Circuit contrasted the scope of recovery under these two actions in holding that the employer was entitled to exoneration from liability because, inter alia, its seamen were not acting in the course of employment when they returned to the vessel heavily intoxicated. The Court recognized that numerous courts had allowed Jones Act recovery for seamen injured while leaving or returning to a ship, but stated:

> Assuming that [the injured seamen] were in the course of their employment while departing from the yacht for the purpose of obtaining their meals and returning thereto in the normal manner, it certainly is a far-fetched idea that they continued in such course when they took to themselves the liberty of spending three near-midnight hours in a tavern consuming intoxicating liquors.

350 F.2d at 597. Similarly, in *Szopko v. Kinsman Marine Transit Co.,* 426 Mich. 653, 397 N.W.2d 171 (1986), *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987), the Michigan Supreme Court held that an intoxicated sailor returning from shore leave was not acting in the course of employment when he slipped on the dock. The Court rejected application of a maintenance and cure standard, aptly stating, "We cannot ignore the phrase 'in the course of his employment,' because it was intended to mean what it says." *Id.,* 397 N.W.2d at 175.

It is appropriate that maintenance and cure be afforded an expansive scope, covering all injuries incurred during the term of a seaman's employment. Maintenance and cure is a very different remedy from that of the Jones Act. It gives shipowners "broad responsibilities for [the] health and safety" of seamen, necessitated by an occupation involving not only significant hazards, but also "constant shuttling between unfamiliar ports." *Aguilar,* 318 U.S. at 727, 63 S.Ct. at 932. As Justice Story wrote in an early American commentary on maintenance and cure:

> [i]f some provision be not made for [seamen] in sickness at the expense of the ship, they must often in foreign ports suf-
> fer the accumulated evils of disease, and poverty, and sometimes perish from the want of suitable nourishment.... On the other hand, if these expenses [the expenses occasioned by perilous diseases] are a charge upon the ship, the interest of the owner will be immediately connected with that of the seamen. The master will never be tempted to abandon the sick to their forlorn fate.

*Harden v. Gordon,* 2 Mason 541, 11 F.Cas. 480, 483 (C.C.D.Me.1823).

Furthermore, the Supreme Court has expressed a policy of making the maintenance and cure remedy as simple as possible.

> It has been the merit of the seaman's right to maintenance and cure that it is so inclusive as to be relatively simple, and can be understood and administered without technical considerations. It has few exceptions or conditions to stir contentions, cause delays, and invite litigations.... [T]he master knew he must maintain and care for even the erring and careless seaman, much as a parent would a child. For any purpose to introduce a graduation of rights and duties based on some relative proximity of the activity at time of injury to the "employment" or the "service of the ship," would alter the basis and be out of harmony with the spirit and function of the doctrine and would open the door to the litigiousness which has made the landman's remedy so often a promise to the ear to be broken to the hope.

*Farrell,* 336 U.S. at 516, 69 S.Ct. at 709–10. Such concerns do not apply to the Jones Act, which is not intended to be a form of insurance for an ill seaman, and necessarily involves sometimes complicated issues of fault.

Lastly, this case is distinguishable from the many cases holding that a seaman returning from shore leave via a customary route is acting in the course of his employment, because in those cases the injury is related to the seaman's duty to return to the ship at a particular time. *See Daughenbaugh,* 891 F.2d at 1206 ("Thus, because Daughenbaugh was required to return to the ship before the appointed sailing time, he was acting in the course of his employment when, en route to the M/V Foy, he disap-

peared on the dock."); *Marceau v. Great Lakes Transit Corp.,* 146 F.2d 416, 418 (2d Cir.), *cert. denied,* 324 U.S. 872, 65 S.Ct. 1018, 89 L.Ed. 1426 (1945) ("The plaintiff was acting under orders when he returned to the ship."). Plaintiff here was pursuing his own private interests when he was injured. He was in the company of his fellow crew members by his own choice in that cocktail lounge. When plaintiff intervened in the dispute between DeJesus and McCarthy, he was not performing a duty that was assigned to him either explicitly or implicitly as an engineer on the S/T Charleston. He had no obligation of any kind to the vessel, its officers or owners to get involved in that altercation. Therefore, on the undisputed facts in this case, plaintiff was not acting "in the course of his employment" as a matter of law at the time of his injury.

### III. *Conclusion*

For the reasons stated above, the Apex defendants' motion for summary judgment on Count I is hereby granted. No judgment shall enter until all issues in this case are resolved. It is so ordered.